**KATHERINE ANN CATON CLEMENTS v. RUSSELL M. McLEOD and VIRGINIA K. McLEOD.**

22 So. (2nd) 220                                    January Term, 1945
May 18, 1945                                           Division B

W. *Wallace Shafer* and *Bentley & Shafer,* for petitioner.
*Bradford G. Williams,* for respondents.

SEBRING, J.:

This is an interlocutory certiorari proceeding to procure review of a stay order entered in a foreclosure suit by the chancellor below under authority of the Soldiers' and Sailors' Civil Relief Act 1940, as amended.

On February 9, 1944, Russell M. McLeod and Virignia K. McLeod, his wife, purchased a certain residence property in Polk County from Katherine Ann Caton Clements to be occupied by the grantees as their home. The agreed purchase price of the property was $3860, a down payment of $2000 cash being required and the remainder to be secured by purchase money mortgage. McLeod and wife borrowed the sum of $2000 from First Federal Savings & Loan Association of Lakeland, Florida, which was paid to the grantor as a down payment on the property. Contemporaneous with the payment, the grantees, with the consent of the grantor, gave a first mortgage on the property to the savings and loan association to secure the loan and gave to the grantor a second mortgage in the sum of $1860 for the remainder of the purchase price due and unpaid. By the terms of this second mortgage the grantees agreed to retire the debt in monthly installments of $25.00 each commencing March 15, 1944.

On July 14, 1944, Katherine Ann Clements filed suit in the Circuit Court of Polk County against McLeod and wife to foreclose her second mortgage because of a default in payment of the monthly installment due June 15, 1944; the plaintiff, under a fifteen day acceleration clause contained in the mortgage, electing to declare the whole amount of the debt due and payable.

Thereafter, on October 12, 1944, and during the pendency of the suit, the defendant, Russell M. McLeod, filed his sworn

petition in the cause seeking a stay of the foreclosure proceedings, under the Soldiers', and Sailors' Civil Relief Act of 1940, as amended. Grounds of the petition were that at the commencement of the suit McLeod had been accepted by the United States Navy as a selectee under the provisions of the Selective Training and Service Act of 1940, as amended, and was then under orders for induction into the military forces of the United States on October 16, 1944; that he was the head of a family consisting of himself, his wife, and three children of very tender years; that he had purchased the property involved in suit for the purpose of providing a place of asylum for his wife and children in the event he should be called to military service; that he had punctually discharged all installments on the first mortgage as they had become due, and was maintaining the first mortgage in good standing notwithstanding plaintiff's suit; that at the commencement of suit he was in arrears on the second mortgage only to the extent of one $25 payment which he had offered to pay to plaintiff, but plaintiff had refused to receive the same and reinstate the second mortgage.

On November 6, 1944, McLeod filed a supplemental petition again praying for a stay of proceedings. By the supplemental petition he alleged that since the filing of the original petition he had actually been inducted into the armed forces of the United States, had been duly sworn in as a member of said military forces, and was actually in active military service; and that by reason of continued maintenance of the first mortgage in good standing, and reduction in his income since his entry into military service, he was unable to meet his obligations on the second mortgage.

By an amendment to the supplemental petition filed November 28, 1944, and sworn to by Virginia K. McLeod, the wife of the inductee, it is averred that before being called into military servce McLeod had been receiving a monthly salary of $300 in civilian employment, as well as additional earnings over that sum from time to time, and that such income was found to be commensurate, but only reasonably so, for the suitable support of himself and family; that the maximum allotment which he was receiving for the support of his

wife and three children since his induction into service was only $120 monthly which amount was not sufficient with which to provide the necessities of life for his wife and chilrden, discharge payments on the first mortgage and meet the demands of the second mortgagee; that the wife is not trained in any other field except as housewife, and that if she were trained to do other work, the tender years of the three infant children of petitioner would preclude any attempt on her part to supplement the income; that the wife of petitioner has attempted to budget her items of expenditure and the running expenses of her household, and that when the monthly payments on the first mortgage are made, premiums on group insurance procured before entry of the petitioner into service are paid, certain monthly payments upon essential items of furniture are discharged, and the remainder of the allotment expended for necessary items of sustenance, nothing is left with which to meet second mortgage payments.

Thereafter, on December 14, 1944, the chancellor caused a hearing to be held before him, at which time he received testimony offered by the plaintiff concerning details of the mortgage transaction, the manner in which payments on the property had been financed, the worth of the property, the state of repair of the property, and other kindred matters pertaining to the property, the loan, and the value of the security given. Testimony was also taken concerning a dispute involving a contemporaneous transaction for the sale of certain household furniture by the plaintiff to the defendants, but such testimony is not material to the issue at hand, for the dispute appears by the record to have been amicably settled. At the conclusion of the hearing the chancellor, at request of defendant's counsel, of which plaintiff had notice, set the matter for further hearing on December 31, 1944, at which time, so it was asserted by defendant's counsel, the defendant McLeod would be home on furlough to testify. Apparently this hearing was never held for no testimony appears to have ever been taken subsequent to the hearing held on December 14, 1944. On January 2, 1945, and without further notice, the chancellor entered an order finding that the petition for stay presented "an equitable basis for relief

whereby the position and assets and home of the said soldier [Russell M. McLeod] will not be damaged but will be preserved for him, and whereunder the position of the plaintiff will be enhanced from month to month upon compliance by the defendants with the terms of this order as hereinafter stated." The terms upon which the foreclosure suit was stayed were that defendants be required to (1) pay and retire the first mortgage of the First Federal Savings and Loan Association of Lakeland, Florida, according to its terms as they may now or hereafter appear of record in the Public Records of Polk County, Florida (2) pay all taxes and assessments against said property promptly as the same may mature and prior to any delinquency of the same, (3) maintain and keep the premises in a presentable state consistent with other properties in the same neighborhood and in good repair, and (4) expend certain proceeds of insurance now available to defendants by reason of storm damage in making repairs to the premises.

Upon the conditions stated, the chancellor stayed the pending suit "for a period equal to the period of the remaining life of said note and mortgage plus a period of time which shall be equal to the period of military service of the applicant, subject to payment of the balance of principal and accumulated interest due and unpaid at the date of termination of the said period of military service in equal periodic installments during such combined period at the rate of interest prescribed in said note and second mortgage, it being the intention to extend the said note and mortgage according to their terms for said period of service and so that the same may thereafter be paid and discharged as though said period of military service had not intervened, all as authorized by the said Soldiers' and Sailors' Relief Act as amended . . . . ; and that no penalties shall accrue under the said note and under the said second mortgage of the plaintiff, during the period the terms and conditions of this stay are complied with, by reason of the failure of the defendants . . . to comply with the terms and conditions of said note and mortgage." The plaintiff seeks to review this order by interlocutory certiorari.

Section 106 of the Soldiers' and Sailors' Civil Relief Act of 1940, as amended (50 U.S.C.A. Appendix Sec. 516) provides that "any person who has been ordered to report for induction under the Selective Training and Service Act of 1940, as amended, shall be entitled to the relief and benefits accorded persons in military service under Articles I, II and III of this Act during the period beginning on the date of receipt of such order and ending on the date upon which such person reports for induction." For full text of amendatory Act see 54 Stat. 1178, c. 888, 56 Stat. 769, c. 581; 50 U.S.C.A. Appendix Secs. 510 et seq; 147 A.L.R. 1395 et seq. At the commencement of the foreclosure suit on July 14, 1944, the defendant, McLeod, had been selected as an inductee for military service and was under orders to report on October 16, 1944 for induction into the military forces of the United States. When he reported on October 16, 1944, he was accepted by the military authorities and was sworn into the service of the United States Navy, where he has remained throughout this entire proceeding. It is clear, therefore, that from the institution of suit until the present time, McLeod has been, and is, a person in the "military service," as the term is defined in Sec. 101 of the amendatory Act (50 U.S.C.A. Appendix 511) and as such is entitled to such protection and relief as is accorded by the terms of the Soldiers' and Sailors' Civil Relief Act of 1940, as amended.

Section 302 of Article III of the Amendatory Act (50 U.S.C.A. Appx. 532) provides:

"Sec. 302. (1) The provisions of this Section shall apply only to obligations secured by mortgage, trust deed, or other security in the nature of a mortgage upon real or personal property owned by a person in military service at the commencement of the period of the military service and still so owned by him which obligations originated prior to such person's period of military service.

"(2) In any proceeding commenced in any court *during the period of military service* to enforce such obligation arising out of nonpayment of any sum thereunder due or out of any other breach of the terms thereof *occurring prior to or during the period of such service* the court may, after

hearing, in its discretion, on its own motion, and shall, on application to it by such person in military service or some person on his behalf, unless in the opinion of the court the ability of the defendant to comply with the terms of the obligation is not materially affected by reason of his military service—(a) stay the proceedings as provided in this Act; or (b) make such other disposition of the case as may be equitable to conserve the interests of all parties.

"(3) No sale, foreclosure, or seizure of property for non-payment of any sum due under any such obligation, or for any other breach of the terms thereof, whether under a power of sale, under a judgment entered upon warrant of attorney to confess judgment contained therein, or otherwise, shall be valid if made after the date of enactment of the Soldiers' and Sailors' Civil Relief Act Amendments of 1942 and during the period of military service or within three months thereafter, except pursuant to an agreement as provided in Section 107, unless upon an order previously granted by the court and a return thereto made and approved by the court." (Italics supplied).

Under the Sections we have quoted provision is made for the protection of the serviceman against injustice or oppressive hardships arising out of the attempted enforcement of obligations originating prior to such serviceman's period of military service. Upon application for relief under such provisions the mandate of the statute is that the court before whom the matter is heard shall stay the proceedings or make such other disposition of the case as may be equitable to conserve the interests of all parties, except in cases where, in the opinion of the court, the ability of the defendant to comply with the terms of the obligation is not materially affected by reason of his military service. Upon application for such relief by a person in military service, or by someone in his behalf, the facts presented should be given liberal consideration. And whether stay or other relief should be granted is a matter addressed to the sound discretion of the court hearing the application, and an order granting relief will not ordinarily be disturbed except upon a plain showing of abuse of judicial discretion. See Ratliff v. Ratliff, (Iowa),

15 N. W. (2nd) 272; Imperial Beverage Co. v. Superior Court, etc., (Cal.) 150 P. 2nd 881; Blazejowski v. Stadnicki, (Mass.) 58 N. E. (2nd) 164; Davis v. Wyche, (N.C.) 32 S. E. (2nd) 358; Boone v. Lightner, 319 U. S. 561, 63 S. Ct. 1223, 87 L. Ed. 1587.

We find no such abuse of discretion as would warrant us in setting aside the order made by the chancellor. There was ample evidence before the chancellor to show that the defendant's ability to comply with the terms of the note secured by the second mortgage and to keep it current had been materially affected by reason of his entry into military service. The $2000 realized from the loan for which the first mortgage was given had been given to plaintiff as a down payment on the property. The first mortgage was being maintained by the soldier out of his allotments without default. Each monthly payment made on the first mortgage diminished the first mortgage lien and enhanced the security of the second mortgage. There is testimony in the record that the property is worth more than the outstanding mortgage loan against the property. Except for the fact that the second mortgage sought to be foreclosed contained an acceleration clause authorizing the mortgagee at her election after fifteen days' default in any monthly payment to accelerate the whole debt, the defendant could never have been indebted to plaintiff at any time prior to suit in an amount greater than $25. The plaintiff had refused to accept this delinquent payment from the defendant after the fifteen day grace period for making such payment had run, but had insisted upon payment of the entire debt. The plaintiff did not elect to declare the whole debt due and payable until the date of suit, at which time by appropriate allegations in her bill of complaint, she exercised her option to accelerate the debt and to sue for the full amount of the mortgage indebtedness. At the time of commencement of suit the defendant was in military service. The chancellor apparently took into account all of these matters and arrived at the conclusion that the application for stay should be granted. In this we think he acted correctly.

All questions raised by petitioner have been considered and are found to be without merit. In our view the order

entered by the chancellor was a proper one and appears to amply conserve the interests of all parties during the defendant's period of military service. The petition for certiorari should therefore be denied.

It is so ordered.

CHAPMAN, C. J., BROWN and THOMAS, JJ., concur.