**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1568

RICHARD D. SIBERT,

                Plaintiff - Appellant,

v.

WELLS FARGO BANK, N.A.,

                Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, District Judge.  (3:14-cv-00737-HEH)

Argued:  May 10, 2017                          Decided:  July 17, 2017

Before NIEMEYER, KING, and DUNCAN, Circuit Judges.

Affirmed by published opinion.  Judge Niemeyer wrote the majority opinion, in which Judge Duncan joined.  Judge King wrote a dissenting opinion.

**ARGUED:** John Daniel Hafemann, MILITARY JUSTICE ATTORNEYS, PLLC, Savannah, Georgia; Jeremy S. McKenzie, KARSMAN, MCKENZIE & HART, Savannah, Georgia, for Appellant.  Terry Catherine Frank, KAUFMAN & CANOLES, P.C., Richmond, Virginia, for Appellee.  **ON BRIEF:** Hunter W. Sims, Jr., KAUFMAN & CANOLES, P.C., Norfolk, Virginia, for Appellee.

NIEMEYER, Circuit Judge:

While serving in the U.S. Navy, Richard Sibert obtained a loan secured by a mortgage to purchase a house in Virginia Beach, Virginia. Soon after his discharge from the Navy, he defaulted on the loan, and the lender began foreclosure proceedings. During those proceedings, however, and before any foreclosure sale was held, Sibert enlisted in the U.S. Army. The lender continued to pursue foreclosure and sold Sibert's house at a foreclosure sale shortly after Sibert had begun his service in the Army.

Sibert commenced this action against Wells Fargo Bank, N.A., alleging that the foreclosure sale was invalid under the Servicemembers Civil Relief Act ("SCRA"), which requires a lender to obtain a court order before foreclosing on or selling property owned by a current or recent servicemember where the mortgage obligation "originated before the period of the servicemember's military service." 50 U.S.C. § 3953(a); *see id*. § 3953(c). The district court granted summary judgment to Wells Fargo, concluding that, because Sibert incurred his mortgage obligation during his service in the Navy, the obligation was not subject to SCRA protection.

For the reasons that follow, we affirm.

I

Sibert entered the Navy in July 2004, and while in the Navy — on May 15, 2008 — he purchased a house in Virginia Beach, financing the purchase with a loan of $174,650 from Advance Mortgage, which was secured by a deed of trust on the house. Sibert's loan was subsequently acquired by Wells Fargo Bank, N.A.

2

After his discharge from the Navy in July 2008, Sibert went into default on his loan, and, several months later, Wells Fargo mailed him a notice a default. In March 2009, Wells Fargo notified Sibert that it had begun steps to foreclose on his house. But, a month later, before the foreclosure sale, Sibert enlisted in the Army. In May 2009, just after Sibert entered the Army, Wells Fargo sold Sibert's house at a foreclosure sale. After signing a move-out agreement, Sibert also executed a "Servicemembers' Civil Relief Act Addendum to Move Out Agreement," in which he stated that he was "affirmatively waiv[ing] any rights and protections provided by [50 U.S.C. § 3953] with respect to the May 15, 2008 Deed of Trust . . . and the May 13, 2009 foreclosure sale."

Over a year later, Sibert and his wife filed a voluntary Chapter 7 bankruptcy petition. In their filings, they did not list any potential claims against Wells Fargo, nor did they advise the bankruptcy court or the trustee of any such possible claim. The bankruptcy court granted Sibert and his wife a discharge on May 9, 2011.

Sibert commenced this action on October 29, 2014, more than five years after the foreclosure sale, alleging that Wells Fargo, by foreclosing on his property and selling his house without a court order while he was in the Army, violated the SCRA, rendering the foreclosure invalid. *See* 50 U.S.C. § 3953(c). The parties filed cross-motions for summary judgment, and, in its motion, Wells Fargo argued, as threshold matters, that Sibert was judicially estopped from bringing an SCRA claim against Wells Fargo because he failed to list the claim in his bankruptcy proceedings and that, because his debts had been discharged, he lacked standing to bring the claim. After conducting an evidentiary hearing, the district court held that Sibert's claim was not barred by judicial

3

estoppel and entered an order staying the action pending the reopening of Sibert's bankruptcy case to allow the trustee to decide whether to pursue the SCRA claim. The trustee filed a motion to substitute herself as the real party-in-interest, and the district court granted the motion and lifted the stay, allowing this case to proceed.

In an opinion and order entered in this case, the district court granted Wells Fargo's motion for summary judgment, concluding that Sibert's mortgage obligation was not protected by the SCRA. The court stated that resolution of the case "turn[ed] on the interpretation of the phrase 'originated before the period of the servicemember's military service'" in 50 U.S.C. § 3953(a), and noted that the application of that language to multiple periods of military service was an issue of first impression. "On its own," the court explained, "the language . . . is unclear on whether it contemplates multiple periods of military service," but the court found that "the specific context of the language indicates that the statute does not apply to obligations incurred while one is in the military, because the underlying concern is the impact military service may have on a servicemember's income and status, uncontemplated at the time when they incurred the obligation." The court accordingly concluded that "[b]ecause it is undisputed that Sibert's mortgage originated while he was in the military, that obligation does not qualify under [§ 3953(a)]" and, "[a]s a result, Sibert cannot claim the remedy provided in [§ 3953(c)]." Because of its ruling, the court did not reach Wells Fargo's alternative argument that Sibert had waived his rights under the SCRA by executing the addendum to his move-out agreement.

4

From the district court's judgment dated May 4, 2016, Sibert filed this appeal. After Sibert filed his opening brief, Wells Fargo filed a motion to dismiss the appeal, contending that Sibert was not a proper party to the appeal and therefore lacked standing. We denied the motion by an order dated November 30, 2016.

II

The relevant section of the SCRA provides protection to servicemembers' "obligation[s] on real or personal property" only when the obligation "originated before the period of the servicemember's military service." 50 U.S.C. § 3953(a). The protections afforded by the SCRA include stays of enforcement, adjustments to preserve the interests of the parties, and the invalidation of foreclosures and sales pursued without a court order while the servicemember is in service and for one year thereafter. *Id*. § 3953(b), (c).

In this case, Sibert incurred his obligation *during* his service in the Navy, and Wells Fargo began foreclosure proceedings after Sibert left the Navy. Before the sale of his house in foreclosure, however, Sibert entered the Army, and his house was sold while he was in the Army.

The district court concluded that 50 U.S.C. § 3953(a) "does not apply to obligations that originate while a servicemember is already in the military" and that therefore it did not provide protection to Sibert's mortgage, which was incurred while he was in the Navy. The court reasoned that "[t]he Act was designed to ensure that servicemembers do not suffer financial or other disadvantages as a result of entering the

5

service," explaining that the Act accomplishes this goal "by shielding servicemembers whose income changes as a result of their being called to active duty, and who therefore can no longer keep up with obligations negotiated on the basis of prior levels of income. Such a change in income and lifestyle was not a factor in Sibert's case, as the mortgage at issue here originated while he was already in the service." We agree with the district court's interpretation of the statute.

Section 3953(a) explicitly creates two classes of obligations — those protected and those not. It provides protection to *only* those obligations that originate *before* the servicemember enters the military service. It thus grants protection to obligations incurred *outside of* military service, while denying protection to obligations originating *during* the servicemember's military service. In this case, Sibert's obligation originated while he was in the Navy and therefore was not in the class of obligations protected by the statute.

In choosing to protect obligations incurred during civilian life, Congress recognized that those obligations could unexpectedly be impacted by entry into military service and the changes in the servicemember's income and status, which were not contemplated at the time the obligation was incurred. Conversely, it chose not to protect obligations incurred during military service because both the servicemembers and lenders would be aware of the servicemember's income and military status. The history of the SCRA and its predecessors further supports this distinction that Congress made. The Soldiers' and Sailors' Civil Relief Act, Pub. L. No. 65-103, 40 Stat. 440 (1918), a World War I–era law, invalidated non-judicial foreclosures on certain mortgages, limiting its

6

application to obligations (1) "originating prior to the date of [the law's] approval" and (2) "owned by a person in military service at the commencement of the period of the military service and still so owned by him." *Id.* § 302, 40 Stat. at 444. That law expired after World War I.

Congress reenacted a largely identical bill as World War II unfolded — The Solders' and Sailors' Civil Relief Act of 1940, Pub. L. No. 76-351, Ch. 888, 54 Stat. 1178 — containing the same relevant limitations on covered mortgage obligations. *See* 54 Stat. at 1182. But in 1942, in reaction to the attack on Pearl Harbor and the United States' entry into the war, Congress amended the 1940 law to expand its protections. H.R. Rep. 77-219, at 1. Among many changes, the 1942 amendments eliminated the requirement that a mortgage obligation be incurred prior to the Act's approval to receive protection. It replaced that requirement — one onerous to recent draftees and enlistees — with the requirement that the "obligations originated prior to such person's period of military service." *See* Pub. L. No. 77-732, § 9(b), 56 Stat. 769, 771. As such, the 1942 law protected mortgage obligations "owned by a person in military service at the commencement of the period of the military service and still so owned by him which obligations originated prior to such person's period of military service." H.R. Rep. 77-219, at 11. This language remained in force until the 2013 enactment of the SCRA, which was designed only as a "comprehensive restatement" of prior versions, made for the sake of "clarity." H.R. Rep. 108-81 at 2380, 2390. Thus, the current language of 50 U.S.C. § 3953(a) aimed simply to restate the 1942 law's two restrictions on covered mortgages — (1) that the obligation was owned by a servicemember at the

7

commencement of his military service, and (2) that it originated before that person's period of military service. In order to give these two requirements independent legal force, the word "before" (or "prior" in the 1942 version) must be read as excluding obligations made during military service.

Sibert argues that, even though his obligation was not a protected obligation at the time he incurred it, as it was not incurred before he entered the Navy, he obtained retroactive protection when he later entered the Army because the obligation was incurred before he entered the Army. This construction, however, reads the singular word "before" myopically. It would lead to inconsistent treatment of substantially identical obligations and would introduce arbitrariness into Congress' distinction between protected and unprotected obligations.

Under Sibert's reading, a servicemember could incur an obligation fully aware of his military pay and lifestyle, yet defeat the statutory exclusion of his obligation by leaving military service and thereafter reenlisting. But allowing a subsequent period of service to trigger statutory protection for an obligation incurred during military service defies the distinction between protected and unprotected obligations that is embodied in the SCRA. Additional military service does not retroactively erase the servicemember's and lender's knowledge of the risks attending an obligation incurred during service or alter the substance of the risks for which the SCRA provides protection. This is why the statute provides protection based on when *the obligation was incurred*, distinguishing between before and during military service. Under Sibert's argument, the statute would grant protection based not on the circumstances under which the obligation was incurred

8

but rather on his subsequent decision to leave and then reenter the service, treating substantially identical obligations in two different and inconsistent ways.

We conclude that, because Sibert's mortgage obligation originated when he was in the Navy, it was not a protected obligation under § 3953(a), and his later enlistment in the Army did not change that status to afford protection retroactively. Accordingly, we affirm the district court's judgment.

Because of our ruling, we need not determine, whether, in the alternative, Sibert executed a valid waiver of his rights under the SCRA.

AFFIRMED

KING, Circuit Judge, dissenting:

Unlike my friends of the panel majority, I am entirely confident that plaintiff Richard Sibert, an active duty soldier in the United States Army, is entitled to avail himself of the statutory protection accorded to American servicemembers against non-judicial foreclosure sales of their homes. That protection is afforded to Sergeant Sibert by the Servicemembers Civil Relief Act, 50 U.S.C § 3901 *et seq.* ("SCRA"). I therefore write separately in dissent.

Put simply, my good colleagues are wrong to withhold SCRA protection from Sibert for two sound reasons. First, the plain language of § 3953 of Title 50 prohibits a non-judicial home foreclosure sale against Sibert, as an active duty soldier, on an obligation he incurred prior to his Army service — notwithstanding Sibert's earlier period of military service in the United States Navy. Second, if any further effort at statutory interpretation is required, § 3953 must be construed liberally in favor of Sibert.

I.

In July 2004, Sergeant Sibert began serving this country as an active duty sailor in the Navy. In May 2008, during his Navy service, Sibert purchased a home in Virginia Beach, Virginia. That purchase was financed with a loan of nearly $175,000 from a company called Advance Mortgage, and it was secured by a deed of trust on Sibert's residence. Sibert's loan was subsequently acquired by defendant Wells Fargo Bank. Sibert was discharged from the Navy in July 2008, when his period of active duty ended.

10

After his Navy service, Sibert worked as a civilian. In March 2009, while he was a civilian, Wells Fargo initiated foreclosure proceedings on Sibert's home in Virginia Beach. The next month, however, Sibert began another period of active duty military service by entering the United States Army. In May 2009, while Sibert was on active duty as an enlisted man in the Army, Wells Fargo sold his Virginia Beach home at a non-judicial foreclosure sale. That sale — and the fact that it was conducted without prior court approval — is the subject of this litigation.

## II.

### A.

SCRA was enacted, according its provisions, "to provide for, strengthen, and expedite the national defense through protection extended . . . to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation." *See* 50 U.S.C. § 3902(1). Additionally, SCRA aims "to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service." *Id.* § 3902(2).

Most relevant here is SCRA's prohibition against a non-judicial foreclosure sale of a servicemember's property "during, or within one year after, the period of the servicemember's military service." *See* 50 U.S.C. § 3953(c). That prohibition

> applies only to an obligation on real or personal property owned by a servicemember that —

11

> (1)    originated before the period of the servicemember's military service and for which the servicemember is still obligated; and
>
> (2)    is secured by a mortgage, trust deed, or other security in the nature of a mortgage.

*Id.* § 3953(a). In this appeal, we are obliged — in the context of the sale of Sergeant Sibert's Virginia Beach home by Wells Fargo — to discern what constitutes "the period of the servicemember's military service." We review de novo this issue of statutory interpretation. *See United States v. Weaver*, 659 F.3d 353, 356 (4th Cir. 2011).

B.

According to the panel majority, Sergeant Sibert, despite having incurred his home mortgage obligation nearly a year before he entered into active duty Army service, cannot avail himself of SCRA's protection against a non-judicial foreclosure sale. That is so, the majority rules today, because Sibert incurred his mortgage obligation to Wells Fargo during his service as a sailor in the Navy. In reaching that conclusion, my friends have rewritten § 3953 to protect servicemembers with respect to only those financial "obligations incurred *outside of* military service." *See ante* at 6. I am unable to subscribe to the majority's statutory revision.

To begin, an elementary principle of statutory interpretation is that, "unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language." *See In re Sunterra Corp.*, 361 F.3d 257, 265 (4th Cir. 2004) (internal quotation marks omitted). That principle is subject to only two narrow exceptions. The first such exception is "premised on absurdity" and "exists when literal

12

application of the statutory language at issue results in an outcome that can truly be characterized as absurd, i.e., that is so gross as to shock the general moral or common sense." *Id.* (internal quotation marks omitted). The second exception is "premised on legislative intent" and "exists only when literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent." *Id.* (internal quotation marks omitted).

A non-judicial foreclosure sale cannot be effected against Sibert, as an active duty soldier in the United States Army, "during, or within one year after, the period of [his] military service," *see* 50 U.S.C. § 3953(c), if Sibert's mortgage obligation "originated before the period of [his] military service," *id.* § 3953(a)(1). Both of those SCRA provisions are concerned with a single period of military service — i.e., *the* period of military service — not *a* or *any* period of such service. Nor is either SCRA provision concerned with the *initial* or *first* period of military service. Plainly then, the breach of an obligation that originated prior to Sibert's current active duty Army service cannot result in a non-judicial foreclosure sale during his Army service.

Wells Fargo conducted its foreclosure sale — without court approval — of Sibert's Virginia Beach home in May of 2009, when Sibert was on active duty as an enlisted man in the Army's artillery forces at Fort Sill, Oklahoma. The relevant mortgage obligation was, however, incurred in May of 2008, nearly a year before Sibert entered into his active duty service with the Army. Pursuant to the plain terms of SCRA, Sibert is thus entitled to avail himself of SCRA's protection against a non-judicial foreclosure sale.

13

The outcome of this dispute that I sponsor today is neither "absurd" nor "demonstrably at odds with clearly expressed congressional intent." *See In re Sunterra Corp.*, 361 F.3d at 265 (internal quotation marks omitted). Indeed, the congressional intent divined by the panel majority — i.e., that Congress intended for SCRA to apply only to mortgage obligations incurred by a servicemember *outside of* any period of military service — is not expressed (clearly or otherwise) in the statute.

## C.

If SCRA's language is somehow ambiguous — and thus requires some further interpretative effort — Sergeant Sibert is yet entitled to avail himself of its protection. For that reason as well, I disagree with my friends in the majority.

In 1943, Justice Jackson, writing for the Supreme Court in *Boone v. Lightner*, explained that the Soldiers' and Sailors' Civil Relief Act of 1940 — SCRA's statutory predecessor — "is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *See* 319 U.S. 561, 575 (1943). The liberal construction afforded to SCRA's predecessor has been properly extended to SCRA, which was enacted in 2013. *See, e.g.*, *Brewster v. Sun Trust Mortg., Inc.*, 742 F.3d 876, 878 (9th Cir. 2014) (relying on *Boone* for proposition that SCRA must be liberally construed). My colleagues have nevertheless narrowly construed SCRA's limitations against Sibert — and thus all his fellow American servicemembers — by effectively treating his separate periods of military service as a single period of such service.

14

Affording the mandated liberal construction to SCRA, each separate period of Sibert's military service — Navy and Army — must be viewed in isolation. In other words, the breach of the home mortgage obligation incurred prior to Sibert's active duty service in the Army cannot result in a non-judicial foreclosure sale of his home during his Army service. Thus, even if the language of § 3953 is somehow ambiguous, Sibert is entitled to SCRA's protection.

## III.

As I see it, Sergeant Sibert is entitled to avail himself of SCRA's protection against a non-judicial foreclosure sale. Because Sibert incurred his home mortgage obligation before entering the Army, Wells Fargo was not entitled to effect a non-judicial foreclosure sale of his residence in Virginia Beach during his Army service. That view is supported by SCRA's plain language and, if necessary, the mandated liberal reading thereof.

Pursuant to the foregoing, I would vacate and remand for further proceedings. I therefore respectfully dissent.