KING, Circuit Judge,
dissenting:
Unlike my friends of the panel majority, I am entirely confident that plaintiff Richard Sibert, an active duty soldier in the United States Army, is entitled to avail himself of the statutory protection accorded to American servicemembers against non-judicial foreclosure sales of their homes. That protection is afforded to Sergeant Sibert by the Servicemembers Civil Relief Act, 50 U.S.C § 3901 et seq. (“SCRA”). I therefore write separately in dissent.
Put simply, my good colleagues are wrong to withhold SCRA protection from Sibert for two sound reasons. First, the plain language of § 3953 of Title 50 pro- *336 Mbits a non-judicial home foreclosure sale against Sibert, as an active duty soldier, on an obligation he incurred prior to his Army service—notwithstanding Sibert’s earlier, period of military service in the United States Navy, Second, if any further effort at statutory .interpretation is required, § 3953 must be construed liberally in favor of Sibert.
I.
In July 2004, Sergeant Sibert began serving this country as an active duty sail- or in the Navy. In May 2008, during his Navy service, Sibert purchased a home in Virginia Beach, Virginia. That purchase was financed with a loan of nearly $175,000 from a company called Advance Mortgage, and it was secured by. a deed of trust on Sibert’s residence. Sibert’s loan was subsequently acquired by. defendant Wells Fargo Bank. Sibert was discharged from the Navy in July 2008, when his period of active duty ended.
After his Navy service, Sibert worked as a civilian. In March 2009, while he was a civilian, Wells Fargo initiated foreclosure proceedings on Sibert’s home in Virginia Beach. The next month, however, Sibert began another period of active duty military service by entering the United States Army. In May 2009, while Sibert was on active duty as an enlisted man in the Army, Wells Fargo sold his Virginia Beach home at a non-judicial foreclosure sale. That sale—and the fact that it was conducted without prior court approval—is the subject of this litigation.
II.
A.
SCRA.was enacted, according its provisions, “to provide for, strengthen, and expedite the national defense through protection extended ... to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation.” See 50 U.S.C. §. 3902(1).. Additionally, SCRA aims “to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely, affect the civil rights of servicemembers during their military service.” Id § 3902(2).
Most relevant here is SCRA’s prohibition against a non-judicial foreclosure sale of a servicemember’s property “during, or within one year after, the period of the servicemember’s military service.” See 50 U.S.C. § 3953(c). That prohibition
applies only to an obligation on real or personal property owned by a service-member that—
(1) originated before the period of the ‘ servicemember’s military sér- ' vice and for which the servicemem-ber is still obligated; and
(2) is secured by a mortgage, trust deed, or other security in the nature of a mortgage.
Id § 3953(a). In this appeal, we are obliged—in the context of the sale of Sergeant Sibert’s Virginia Beach home by Wells Fargo—to discern what constitutes, “the period of the servicemember’s military service.” We review de .novo this issue of statutory interpretation. See United States v. Weaver, 659 F.3d 353, 356 (4th Cir. 2011).
B.
According to the panel majority, Sergeant. Sibert, despite, having incurred his home mortgage obligation nearly a year before he entered into active duty Army service, cannot, avail himself of SCRA’s protection against a non-judicial foreclosure sale. That is so,, the majority rules today, because Sibert incurred his mortgage obligation to Wells Fargo, .during his *337 service as a sailor in the Navy. In reaching that conclusion, my friends have rewritten § 3953 to protect servicemembers with respect to only those financial “obligations incurred outside of military service.” See ante at 334. I am unable to subscribe to the majority’s statutory revision.
To begin, an elementary principle of statutory interpretation is that, “unless there is some ambiguity in the language of a statute, a court’s analysis must end with the statute’s plain language.” See In re Sunterra Corp., 361 F.3d 257, 265 (4th Cir. 2004) (internal quotation marks omitted). That principle is subject to only two narrow exceptions. The first such exception is “premised on absurdity” and “exists when literal application of the statutory language at issue results in an outcome that can truly be characterized as absurd, i.e., that is so gross as to shock the general moral or common sense.” Id. (internal quotation marks omitted). The second exception is “premised on legislative intent” and “exists only when literal application of the statutory language at issue produces .an outcome that is demonstrably at odds with clearly expressed congressional intent.” Id. (internal quotation marks omitted).
A non-judicial foreclosure sale cannot be effected against Sibert, as an active duty soldier in the United States Army, “during, or within one year after, the period of [his] military service,” see 50 U.S.C. § 3953(c), if Sibert’s mortgage obligation “originated before the period of [his] military service,” id. § 3953(a)(1). Both of those SCRA provisions are concerned with a single period of military service—i.e., the period of military service—not a or any period of such service. Nor is either SCRA provision concerned with the initial or first period of military service. Plainly then, the breach of an obligation that originated prior to Sibert’s current active duty Army service cannot result in a non-judicial foreclosure sale during his Army service.
Wells Fargo conducted its foreclosure sale—without court approval—of Sibert’s Virginia Beach home in May of 2009, when Sibert was on active duty as an enlisted man in‘the Army’s artillery forces at Fort Sill, Oklahoma. Thé relevant mortgage obligation was, however, incurred in May of 2008, nearly a year before Sibert entered into his active duty service with the Army. Pursuant to the plain terms of SCRA, Sibert is thus entitled to avail himself of SCRA’s protection against a non-judicial foreclosure sale.
The outcome of this dispute that I sponsor today is neither “absurd” nor “demonstrably at odds with clearly expressed congressional intent.” See In re Sunterra Corp., 361 F.3d at 265 (internal quotation marks omitted). Indeed, the congressional intent divined by the panel majority—i.e., that Congress intended for SCRA to apply only to mortgage obligations incurred by a servicemember outside of any period of military service—is not expressed (clearly or otherwise) in the statute.
C.
If SCRA’s language is somehow ambiguous—and thus requires some further interpretative effort—Sergeant Sibert is yet entitled to avail himself of its protection. For that reason as well, I disagree with my friend's in the majority.
In 1943, Justice Jackson, writing for the Supreme Court in Boone v. Lightner, explained that the Soldiers’ and Sailors’ Civil Relief Act of 1940—SCRA’s statutory predecessor—“is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation.” See 319 U.S. 561, 575, 63 S.Ct. 1223, 87 L.Ed. 1587 (1943). The liberal construction afforded to *338 SCRA’s predecessor has been properly extended to SCRA, which was enacted in 2013. See, e.g., Brewster v. Sun Trust Mortg., Inc., 742 F.3d 876, 878 (9th Cir. 2014) (relying on Boone for proposition that SCRA must be liberally construed). My colleagues have nevertheless narrowly construed SCRA’s limitations against Sibert—and thus all his fellow American servicemembers—by effectively treating his separate periods of military service as a single period of such service.
Affording the mandated liberal construction to SCRA, each separate period of Sibert’s military service—Navy and Army—must be viewed in isolation. In other words, the breach of the home mortgage obligation incurred prior to Sibert’s active duty service in the Army cannot result in a non-judicial foreclosure sale of his home during his Army service. Thus, even if the language of § 3953 is somehow ambiguous, Sibert is entitled to SCRA’s protection.
III.
As I see it, Sergeant Sibert is entitled to avail himself of SCRA’s protection against a non-judicial foreclosure sale. Because Si-bert incurred his home mortgage obligation before entering the Army, Wells Fargo was not entitled to effect a nonjudicial foreclosure sale of his residence in Virginia Beach during his Army service. That view is supported by SCRA’s plain language and, if necessary, the mandated liberal reading thereof.
Pursuant to the foregoing, I would vacate and remand for further proceedings. I therefore respectfully dissent.