*415 OPINION OF THE COURT
Carolyn E. Demarest, J.
In this paternity proceeding brought pursuant to Family Court Act article 5, petitioner alleges that the respondent is the father of her child, Tiffany Latrese G., born September 10, 1984, in Newark, New Jersey. The petition was sworn July 19, 1985. Petitioner explains her delay in initiating the proceeding in this court as the result of jurisdictional problems in attempting to initiate suit in the State of New Jersey.
On August 28, 1985, respondent appeared before Judge Guy De Phillips in this court and denied paternity. Judge De Phillips appointed counsel for respondent and ordered all parties to appear for blood-grouping (BGT) and human leucocyte antigen (HLA) testing pending the adjourned date of October 16, 1985. Judge De Phillips also noted that respondent was in military service at the time, but there is no indication in the indorsement that the testing should be expedited or that respondent advised the court of his inability to appear on the adjourned date.
In fact, no one appeared for the tests scheduled for September 17, 1985. Petitioner explains she defaulted because she was aware that the respondent had left the country and would not appear. Respondent failed to appear because, according to a subsequent letter to his attorney, respondent left the United States upon reassignment to Germany, on August 31, 1985. Thereafter, only respondent’s counsel has appeared in court. A motion was made informally to stay the proceeding pending respondent’s military service abroad and counsel was appointed for petitioner to facilitate her response. Memoranda of law were filed without any supporting representation from respondent to verify his status.
Finally, on August 22, 1986, pursuant to this court’s direction, respondent’s counsel offered a notarized letter from respondent, directed to counsel, stating that he departed the United States on August 31, 1985, just three days after his court appearance. The letter further indicates that respondent does expect to have additional leave time prior to May 23, 1988, when his present term of service expires, but does not indicate when that might be. Respondent only states that he has limited leave time available at present and does not have the funds for the trip to New York because he is repaying a loan from the Government. Respondent reiterates his denial of paternity though he does acknowledge that he knew the petitioner at the critical time of conception.
*416 A letter from Captain Maria E. Mierzwinski of the 38th Personnel and Administration Battalion dated August 11, 1986, also addressed to respondent’s counsel, verifies that respondent’s leave expired August 31, 1985, and that he arrived "at this unit” (apparently in the Federal Republic of Germany) on September 4, 1985. Captain Mierzwinski states that respondent had seven days’ leave accrued through the month of July 1986, and has a training exercise scheduled for September, with "further schooling shortly thereafter”.
Respondent has moved to dismiss the proceeding on jurisdictional grounds based upon the facts that respondent is outside the jurisdiction in military service and the mother and child are residents of New Jersey. This specious argument must be dismissed out of hand. Respondent was duly served while stationed at Fort Hamilton military base in the State of New York. He appeared and, while represented by his present counsel, failed to raise any question of proper service or take issue with the court’s jurisdiction.
Respondent’s argument that the court should not proceed because petitioner and her child receive welfare in New Jersey is similarly meritless. Petitioner properly came into this jurisdiction in order to obtain jurisdiction over respondent. The issue of support must, of course, be reserved until the question of paternity is resolved, but financial support is not the only reason a parent might justifiably seek to establish the paternity of her child. If respondent is Tiffany’s father, he will also owe her emotional and psychological support and would be a proper resource for her care should petitioner ever become incapacitated. Petitioner’s interest in this regard coincides with the State’s interest as parens patriae.
Respondent’s primary application is, however, to hold this matter in suspension pending respondent’s return from Germany at some future unspecified date.
Section 304 of New York’s Military Law, upon which respondent relies, provides: "At any stage thereof, any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this act, unless, in the opinion of the court, the ability of plaintiff to prosecute *417 the action, or the defendant to conduct his defense, is not materially affected by reason of his military service.” It cannot be seriously doubted, given the nature of the instant proceeding and the need for BGT and HLA testing as a preliminary to trial, that respondent’s absence from the jurisdiction does affect his defense.
However, it is apparent from the documents in evidence, containing respondent’s own admissions, that he is not absent from the jurisdiction involuntarily due to his military service for the entire period of his service. Rather, both he and the service admit that he is free to return to New York to defend this proceeding for at least seven days and it is his own personal preference and convenience that is preventing him from doing so. Therefore, although his military service may be the cause of his absence, since it is apparently respondent’s own choice not to return to defend this case, I find that his ability to conduct his defense is not materially affected by reason of his military service. The protection of Military Law § 304, requiring suspension of the proceeding pending military service, is therefore unavailable to this respondent. (See, Boone v Lightner, 319 US 561 [1943]; Slove v Strohm, 94 Ill App 2d 129, 236 NE2d 326 [1st Dist 1968].)
Moreover, it is noted that section 304, a part of New York’s Military Law article XIII, known as the New York State Soldiers’ and Sailors’ Civil Relief Act, was enacted in its present form in 1951 (L 1951, ch 728) in response to the national emergency created by the Korean War (see, Letter of Assembly Member Frank J. Becker to Governor’s counsel Lawrence E. Walsh dated Feb. 12, 1951, in support of the bill). As enacted, the statute was to expire on April 1, 1953 (L 1951, ch 728, § 327), in the expectation that the war was a temporary condition. Similarly, its precursor, enacted in 1941, which paralleled the Federal Soldiers’ and Sailors’ Civil Relief Act of 1940 (50 USC Appendix § 521), was also a response to the outbreak of war (L 1941, ch 686, § 300), and expired in 1948 at the conclusion of hostilities. It was not until 1963 that the present statute became permanent, having been extended almost annually, apparently because of the continuing conflict in Vietnam. (See, L 1954, ch 116; L 1955, ch 220; L 1956, ch 509, § 6; L 1959, ch 172; L 1960, ch 115; L 1963, ch 218.) The legislative history of the Federal Soldiers’ and Sailors’ Civil Relief Act of 1940, which includes similar temporary provisions for the protection of wartime military personnel going back to the Civil War, also supports this court’s view that the *418 relief afforded under these statutes was intended primarily for those engaged in a war effort at a time of national emergency. (See, Boone v Lightner, 319 US, at p 565, n 2.)
While one of the obvious and stated purposes of the New York Soldiers’ and Sailors’ Civil Relief Act is to protect persons, prevented by their military service obligations from responding to legal proceedings, from entry of judgment without a fair opportunity to be heard, it was not intended to give immunity from claims arising out of acts performed outside the purview of military service and is not to be used as a sword to the detriment of the rights of others. (Isaacs v Isaacs, 37 NYS2d 527 [Sup Ct, Kings County 1942].) The importance of petitioner’s interest, and particularly this State’s concern for protecting this child’s right to the care and support of both of her parents, as evidenced by recent legislative action at both State and Federal levels to ensure the diligent prosecution of those rights whenever possible (see, New York State Support Enforcement Act of 1985, L 1985, ch 809), requires this court to carefully weigh the inconvenience to respondent in returning to defend this proceeding against the obvious detriment to petitioner and her child and the State (whether it be New York or New Jersey) in further delay. This court finds the interests favoring the prompt prosecution of this proceeding to be the more compelling.
In Turchiano v Jay Dee Transp. (109 AD2d 790 [2d Dept 1985]) in a personal injury action, the court found error in the lower court’s failure to grant an application to restore the case to the Trial Calendar upon the defendant’s failure to supply proof of military service. The Appellate Division directed deferral of the trial to allow defendant time to submit affidavits of both defendant and his commanding officer as to the earliest possible date he could be made available for trial.
In the case at bar, this court has already directed the submission of such affidavits and has allowed respondent the opportunity to suggest a date convenient to himself. Instead of offering to appear on a date certain, respondent has conceded the availability of leave time and his intention to return to the jurisdiction sometime prior to the expiration of his term of service, but states his unwillingness to return until he has repaid money advanced to him by the Government. His commanding officer, instead of stating a basis in respondent’s military service obligation for his failure to appear, merely confirms respondent’s expiration of leave on August 31, 1985, his arrival in Germany on September 4, 1985, the expiration *419 of his term of service on May 23, 1988, the availability of seven days’ leave time as of July 1986 and the fact that he is repaying an advance of pay from the Government. Captain Mierzwinski indicates respondent has a scheduled training exercise in September and "further schooling shortly thereafter”, although she gives no dates or details. Finally, Captain Mierzwinski states that she "deeply feel[s] in the best interest of Sergeant L. he should request leave in the future when he has accrued more leave time, repayed [sic] his debt to the government and has completed his military obligation” (emphasis added). No mention is made of the best interests of the Army or the interests of national security. It is, therefore, presumed that there are no specific limitations upon respondent’s availability by reason of his military obligations.
Happily, at this moment this Nation is at peace. Nowhere in the world are American troops engaged in combat. There is no longer a draft, and military service, even overseas, is voluntary, more akin to employment than an obligation of citizenship. Under such circumstances, it is questionable whether the Soldiers’ and Sailors’ Civil Relief Act was meant to apply. Given the evidence presented that military service is not per se inhibiting respondent’s appearance, and the compelling interest of the State as parens patriae in determining young Tiffany’s paternity, the application to place this matter upon the Military Suspense Calendar is denied.
In order to minimally inconvenience respondent, the court has arranged with Dr. Sussman of the Lindsay-Kimball Research Institute to perform the BGT and.HLA testing at 8:00 a.m. on Tuesday, October 21, 1986. Dr. Sussman has advised the court that the results of these tests will be made available to the parties on Thursday, October 23, and that he will, at the court’s direction, make himself available to give testimony, if necessary, on Friday, October 24, 1986. Accordingly, as previously directed by order entered in open court on August 29, 1986, the parties and Tiffany are directed to present themselves at 8:00 a.m. on October 21, 1986, and submit to BGT and HLA testing. The case is adjourned to Friday, October 24, 1986, at 9:30 a.m. in Part VI for trial.