IN RE the MARRIAGE OF: Michael Paul VAUSE, Petitioner-Respondent,

v.

Sandra Marie VAUSE, Appellant.

Court of Appeals

*No. 86–1304. Submitted on briefs December 10, 1986.—Decided May 14, 1987.*

(Also reported in 409 N.W.2d 412.)

For the appellant the cause was submitted on the brief of *David H. Bennett* and *Bennett and Bennett*, of Portage.

For the petitioner-respondent the cause was submitted on the brief of *Edward E. Leineweber* and *Edward E. Leineweber, S.C.*, of Richland Center.

There was a brief by *Eileen A. Brownlee* and *Kramer and McNamee*, of Fennimore, guardian *ad litem*.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J. Sandra Vause appeals an order recognizing and enforcing the divorce decree of a West German court which awarded Michael custody of their child, Tonya. She confines her argument to enforcement of the custody decree. We conclude that the trial

court properly enforced the decree under the Uniform Child Custody Jurisdiction Act (UCCJA), ch. 822, Stats.[1] We further conclude that Sandra's status as a member of the United States Air Force did not require that she receive more than the reasonable notice of the foreign-court proceedings and the opportunity to be heard required by sec. 822.23. We therefore affirm.

Michael and Sandra Vause were married while both were members of the United States Air Force. Tonya was born August 31, 1983 while they were stationed in California. In April 1984 both Sandra and Michael received orders to report for overseas duty, Sandra to Turkey and Michael to West Germany. They agreed that Michael should take Tonya to West Germany because living conditions there were better than in Turkey.

In May 1985 Michael began a divorce action in the county court of Bitburg, West Germany. On February 7, 1986 the court heard Michael's petition and entered a decree dissolving the marriage and awarding Michael custody of Tonya.

In July 1986 Michael brought Tonya to Wisconsin to visit Sandra's parents. Sandra refused to return Tonya to Michael's custody. Michael filed the West German decree with the clerk of courts of Richland county, Wisconsin and moved the circuit court to recognize and enforce the decree. Sec. 822.15(1), Stats. The court entered the order appealed from.

---

[1]The UCCJA was enacted as ch. 822, Stats., by sec. 9, ch. 283, Laws of 1975. The chief purpose of the Act is to safeguard the best interests of the child by limiting concurrent jurisdiction and deterring child abductions. Commissioner's Prefactory Note to UCCJA, 9 U.L.A. 111–14 (West 1979); *Vorpahl v. Lee,* 99 Wis. 2d 7, 10, 298 N.W.2d 222, 224 (Ct. App. 1980).

Sandra argues that the trial court erred in recognizing and enforcing the West German custody decree because the requirements of the due process clause of the fourteenth amendment were not satisfied in the custody proceedings. She further argues that the trial court erred in enforcing the West German decree against her rights because the requirements of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. App. sec. 501 *et seq.* (1982), were not satisfied in the custody proceedings.

Tonya's guardian ad litem joins Sandra's argument that the West German court lacked jurisdiction over her because the due process clause requirements were not met. The guardian also argues that we should remand this case to the trial court with directions to treat the case as one for an initial custody determination. Neither Sandra nor the guardian argues that the jurisdictional standards of sec. 822.03, Stats., were not met in the West German court.[2]

We first consider Sandra's and the guardian's due process clause argument. They attack the West German court's jurisdiction over Sandra because she lacked the "minimum contacts" necessary so that maintenance of Michael's suit for divorce and custody did not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). This requirement has been imposed by the courts on proceedings in a state court affecting a resident of another state under the

[2]We note that Michael and Tonya lived in West Germany for the six months immediately preceding commencement of the West German action. This satisfied the jurisdictional basis of sec. 822.03(1)(a), Stats.

due process clause of the fourteenth amendment. *Kulko v. California Superior Court,* 435 U.S. 84, 91–92 (1978). They also contend the West German court lacked personal jurisdiction over Sandra sufficient to make an enforceable custody decree because she was not served with process, as required by the due process clause. *See Milliken v. Meyer,* 311 U.S. 457, 463 (1940).

The due process clause of the fourteenth amendment has no direct application to proceedings before a court of a foreign nation.[3] Reese, *The Status In This Country of Judgments Rendered Abroad,* 50 Colum. L. Rev. 783, 796 (1950). However, our response to Sandra's and the guardian's arguments as to the jurisdiction of the West German court does not end here. Their arguments embody a contention that Sandra did not receive reasonable notice and an opportunity to be heard. Since sec. 822.23, Stats.,[4] requires, as a condition to recognition and enforcement of foreign-nation custody decrees, that reasonable notice and opportunity to be heard have been given to all affected persons, we will review the record to determine whether this

---

[3]The due process clause of the fourteenth amendment provides: "No *State* shall ... deprive any person of life, liberty, or property, without due process of law...." (Emphasis added.) The due process clause does apply to child custody determinations made by sister states. *See In re Davanis v. Davanis,* 132 Wis. 2d 318, 329–30, 392 N.W.2d 108, 113 (Ct. App. 1986).

[4]Section 822.23, Stats., provides:

The general policies of this chapter extend to the international area. The provisions of this chapter relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody institutions rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons.

requirement was met. Our analysis does not, however, proceed from the commands of the due process clause but from the command of the statute.[5]

Sandra and the guardian contend that service of process on Sandra was required in the manner prescribed by the Hague Convention.[6] The treaty is not the exclusive vehicle for the service of process. It "merely provides a mechanism by which a plaintiff authorized to serve process under the laws of its country can effect service that will give appropriate notice to the party being served and will not be objectionable to the country in which that party is served." *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 288 (3rd Cir. 1981). Service according to the convention insures that documents are brought to the notice of the addressee in sufficient time to permit the

---

[5]Some jurisdictions have assumed without discussion that the due process clause applies to efforts to enforce foreign-nation judgments in the courts of the United States. In *Ackermann v. Levine,* 788 F.2d 830, 838 (2d Cir. 1986), the court required that *in personam* jurisdiction over the defendant have been established by the existence of *International Shoe*'s "minimum contacts," and reasonable notice satisfying constitutional due process. In Nevada, a court's recognition of foreign jurisdiction requires that the demands of procedural and substantive due process are met in the foreign forum. *Lugot v. Harris,* 499 F. Supp. 1118, 1120 (D. Nev. 1980). In *Mercandino v. Devoe & Raynolds, Inc.,* 436 A.2d 942, 943 (N.J. Super. Ct. App. Div. 1981), the court applied the *International Shoe* "minimum contacts" test to determine jurisdiction of the foreign court. In *Somportex Limited v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435, 444 (3rd Cir. 1971), *cert. denied,* 405 U.S. 1017 (1972), the court found that the procedure in the English court "comports with our standards of due process."

[6]Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents In Civil or Commercial Matters, February 10, 1969, 20 U.S.T. 361, T.I.A.S. No. 6638.

addressee an opportunity to be heard. *Tamari v. Bache & Co. (Lebanon) S.A.L.,* 431 F. Supp. 1226, 1228 (N.D. Ill.), *aff'd,* 565 F.2d 1194 (7th Cir. 1977), *cert. denied,* 435 U.S. 905 (1978). It does not follow that other methods of service may not be used. *Id.* If Sandra was given notice of the proceedings sufficient to satisfy sec. 822.23, Stats., the failure to serve her with process as prescribed by the Hague Convention did not deprive the court of jurisdiction over her.

Sandra acknowledges that she had actual notice of the proceedings. She concedes that Michael made numerous attempts to serve her with "papers" regarding the divorce action in the West German court but she refused to accept service. A copy of the divorce papers was mailed to the West German embassy in Ankara, Turkey. The embassy forwarded them to the Turkish Department of Justice which delivered them to Sandra's base for service upon her. She admits that a base officer told her that papers had been received "regarding a divorce action" and asked if she intended to sign for them. When she said "no," the officer returned the papers.

Sandra testified that in the summer of 1985 she received a photostatic copy of "papers," written in German, regarding the action. She also testified that in the summer and fall of 1985 Michael called her a number of times to discuss the divorce proceedings. She admitted she learned from Michael in November 1985 that the hearing would be held in February 1986. She consulted on over twenty occasions with the judge advocate general who told her that German law had no jurisdiction over her as a United States citizen and, further, that she was protected by the Soldiers' and Sailors' Civil Relief Act of 1940.

We conclude that Michael made reasonable efforts to serve Sandra with notice of the proceedings. A person cannot refuse to accept service and then object that service and notice was incomplete. *Boeck v. State Highway Comm.,* 36 Wis. 2d 440, 446–47, 153 N.W.2d 610, 613 (1967). Sandra does not argue that had she appeared she would not have been given an opportunity to be heard. We therefore conclude that the notice and opportunity to be heard requirements of sec. 822.23, Stats., were satisfied.

Sandra's final argument is that public policy declared in the Soldiers' and Sailors' Civil Relief Act of 1940, *supra,* requires that the West German custody decree not be enforced to adversely affect her rights to Tonya's custody. Specifically, 50 U.S.C. App. sec. 510 states that the purpose of the Act is to suspend the civil liabilities, in certain cases, of persons in the United States military service to enable such persons to devote their entire energy to the defense needs of the nation.

Sandra contends that without her personal appearance or by counsel, the West German court could not make a decree enforceable against her interests. The Act does not apply to foreign nations. 50 U.S.C. App. sec. 512. However, Sandra asserts she is entitled to the same protection against a judgment of a foreign nation as she has against a judgment of a state court. But, as Michael points out, the Act was enacted to give the military person a shield for defense and not a sword for attack. *Luckes v. Luckes,* 71 N.W.2d 850, 853 (Minn. 1955). Good faith is required on the part of the service person and diligence in attempting to attend the proceedings must be shown. *Id.* The Act does not

164

prevent entry of a divorce judgment against nonappearing military personnel when there has been notice of the pendency of the action and adequate time and opportunity to appear and defend. *Roqueplot v. Roqueplot,* 410 N.E.2d 441, 443 (Ill. App. Ct. 1980). Sandra testified that, acting on the advice of counsel, she made no effort to obtain leave so that she could appear at the February 1986 hearing.

█

We reject the argument of Tonya's guardian ad litem that Tonya's best interests require that this case be remanded to the circuit court to be treated as an application for an initial custody determination under ch. 822, Stats. The determination of Tonya's custody has, properly, been made by the West German court.[7] The only jurisdiction over Tonya to determine her custody which the courts of this state have is under secs. 822.03(1)(c) or (d),[8] or 822.14(1). Neither Sandra

---

[7]The West German court considered the best interests of the child in determining custody. The divorce decree contained a section dealing with the parental care of Tonya. The court received a recommendation from the office of adolescence favorable to awarding custody of Tonya to Michael.

[8]Section 822.03(1), Stats., provides that jurisdiction exists in a court of this state to make a child custody determination by initial or modification decree if:

> (c)   The child is physically present in this state, and the child has been abandoned or it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
>
> (d)   It appears that no other state would have jurisdiction under prerequisites substantially in accordance with par. (a), (b) or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine

nor Tonya's guardian contended before the trial court nor contend here that the factual circumstance of either secs. 822.03(1)(c) or (d) was present. Sec. 822.14(1) prescribes the additional circumstances in which a valid child custody decree made by a court of another state may be modified. Sec. 822.14(1) provides:

If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction.

A court of this state may not under this section modify a child custody decree which it must recognize and enforce under the UCCJA unless the court which made the decree no longer has jurisdiction under the jurisdictional standards of the Act or has declined to exercise that jurisdiction. *See Bull v. Bull,* 311 N.W.2d 768, 772 (Mich. Ct. App. 1981). As of the time of the hearing herein, Michael was still stationed in West Germany and he and Tonya remained subject to the jurisdiction of the West German court. In these proceedings, the trial court lacked jurisdiction to modify the West German custody decree. If every state in which a parent and child momentarily happened to be presumed to modify custody awards in the

the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

best interests of the child, the purposes of the UCCJA would be defeated.[9]

*By the Court.*—Order affirmed.

[9]Section 822.01(1), Stats., provides:

(1)  The general purposes of this chapter are to:

(a)  Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(b)  Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(c)  Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and family have a closer connection with another state:

(d)  Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(e)  Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(f)  Avoid relitigation of custody decisions of other states in this state insofar as feasible;

(g)  Facilitate the enforcement of custody decrees of other states;

(h)  Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(i)  Make uniform the law of those states which enact it.