In re Roberto A. DIAZ, Debtor.

TIC FEDERAL CREDIT
UNION, Plaintiff,

v.

Roberto A. DIAZ, Defendant.

Bankruptcy No. 87–40571–COL.
Adv. No. 87–4056–COL.

United States Bankruptcy Court,
M.D. Georgia, Columbus Division.

Feb. 5, 1988.

Leslie L. Cohn, Cohn & Cohn, P.C., Columbus, Ga., for plaintiff.

Thomas L. Thompson, Jr., Columbus, Ga., for defendant.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

This is an Adversary Proceeding to determine dischargeability of debt pursuant to 11 U.S.C. section 523(a)(2). The court finds facts as follows: On May 11, 1987 the Debtor applied to Plaintiff for a loan and completed an application indicating that it included a complete listing of all of his debts and obligations. Plaintiff contends that Debtor fraudulently concealed over $8,000.00 worth of debt to four creditors as a result of which his loan was approved. He was a Staff Sergeant E–6 stationed at Fort Benning, Georgia, at the time of the application and represented on the application that he did not expect a duty station transfer within the next year.

On May 22, 1987 orders were issued assigning Debtor to Berlin, Germany and giving him an arrival date of January 1, 1988. The authority for issuing the order was cited to be a message dated May 16, 1987.

On July 22, 1987 the Debtor signed a petition under Chapter 7 of the Bankruptcy Code which was filed and relief ordered on August 4, 1987. The Debtor attended a first meeting of creditors pursuant to section 341(a) of the Bankruptcy Code on September 24, 1987. On November 16, 1987 this Adversary Proceeding was filed. Summons was issued and the complaint together with the summons were served by mail on the Debtor on November 19, 1987. He filed an answer denying that the debt in question should be found to be non-dischargeable, claiming that he was advised that he need not necessarily list all of the debts that he owed, and further claiming that the Plaintiff relied upon a credit bureau check rather than his application in granting the loan.

On December 1, 1987 the Debtor also filed a plea for stay under the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.A.App. section 501 *et seq.* A hearing was held on the plea for stay on December 22, 1987 at which time the Debtor's attorney represented that to the best of his knowledge the Debtor had already departed for Germany although the orders showed a reporting date of January 1, 1988. No affidavit was presented by the Debtor showing his inability to defend the action prior to his return to the continental United States. The Court has been left to speculate as to when the Debtor will so return. For the purposes of this motion, it is assumed that the normal tour of duty in Germany for a Staff Sergeant E–6 authorized, as this Debtor was, to have a permanent change of station to Germany accompanied by his family would be not less than three years.

The Plaintiff objects to a stay contending that the Debtor knew he was going to be stationed overseas when he made the loan and gave the alleged false information and further contending that the reason for the stay is to delay the case.

## CONCLUSIONS OF LAW

The Supreme Court has recognized that trial courts have discretion in determining whether or not a member of the military service is acting in good faith and whether or not military service materially affects his ability to prosecute or defend the action. *Boone v. Lightner,* 319 U.S. 561, 63 S.Ct. 1223, 87 L.Ed. 1587 (1943), *reh'g denied,* 320 U.S. 809, 64 S.Ct. 26, 88 L.Ed. 489 (1943).

The pertinent provision of the Soldiers' and Sailors' Civil Relief Act is found at 50 U.S.C.A.App. section 521:

"At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter, may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act [sections 501 to 591 of this Appendix], unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service."

In the *Boone* case, the Supreme Court traces the history of the Soldiers' and Sailors' Civil Relief Act as a substantial re-enactment of a 1918 Act which it notes had conferred judicial discretion on the trial court and which had been generally construed consistently with that policy. The Court noted a statement in the Senate Committee Report at the time the Soldiers' and Sailors' Civil Relief Act was being considered to the effect that "there are adequate safeguards incorporated in the bill to prevent any person from taking undue advantage [of its provisions]." *Sen.Rept. No. 2109*, 76th Cong., 3d Sess., p. 2, quoted at 319 U.S. 569, 63 S.Ct. 1228, 87 L.Ed. 1593. The Supreme Court then affirmed the finding of the trial court that Boone's military service did not prevent him from being present and defending the case. It appeared to the Court that Boone had not applied for a leave at all.

"The Soldiers' and Sailors' Civil Relief Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation. The discretion that is vested in trial courts to that end is not to be withheld on nice calculations as to whether prejudice may result from absence, or absence result from the service. Absence when one's rights or liabilities are being adjudged is usually prima facie prejudicial. But in some few cases absence may be a policy, instead of the result of military service, and discretion is vested in the courts to see that the

immunities of the Act are not put to such unworthy use." 319 U.S. at 575, 63 S.Ct. at 1231, 87 L.Ed. at 1596.

In this case, the court finds that it is very likely that the Debtor knew that he was going to receive overseas orders at the time he applied for the loan in question. Very shortly thereafter he filed his Chapter 7 petition. When he was served with the dischargeability complaint, apparently more than five weeks before he was to report to his overseas duty station, he filed an answer and his plea for stay, but did not request a trial of the case prior to his departure. In fact, the summons scheduled a pre-trial conference on this case for December 22, ten days before the Debtor was scheduled to report to Berlin. At that time, the court was willing to schedule a trial of this case within the next several days, but the Debtor's attorney did not know how to reach him in order to schedule such a trial. The Debtor had failed to advise his attorney how he could be reached prior to his departure for Germany. The court assumes that the Debtor was on leave pending his January 1 reporting date and that the case could have been tried sometime after the service of the complaint and before he reported to Germany if he had only requested the same of the court.

The Debtor has failed to advise the court as to what efforts he has made to obtain leave in order to return to defend the case. As noted earlier, he has also failed to advise the court as to when he might return to the continental United States on permanent reassignment although he has asked for a continuance until that unspecified date by his plea for stay.

In determining whether or not a service member's rights may be materially affected by his absence, the courts have considered evidence of his diligence to preserve his rights during the litigation and his good faith or lack thereof in proceeding with the action when he had the opportunity to do so. A number of courts have exercised discretion and denied a stay under circumstances where they found a service member had not exercised good faith

or had not diligently pursued the action when he had the opportunity to do so. *See, e.g., Robbins v. Robbins*, 193 So.2d 471 (Fla.App.1967); *Luckes v. Luckes*, 245 Minn. 141, 71 N.W.2d 850, 54 A.L.R.2d 384 (1955); *Vause v. Vause*, 140 Wis.2d 157, 409 N.W.2d 412 (Wis.App.1987).

The original act of 1918 was passed during World War I at a time when communications and technology were not very far advanced by modern day standards. The Soldiers' and Sailors' Civil Relief Act was enacted in 1940 just prior to the United States' entry into World War II. Although communications had improved tremendously since 1918, there have been far more advances since that time. Air mail can carry written communication from this country to Germany in a period of a few days. Therefore a circle of communication in writing can be expected within two weeks at the most. Regular telephone communication may be obtained with Germany instantly. Court reporters may take depositions in Germany including video tape depositions for use at trials in this country.

Based upon the record before this court with its strong suggestions of bad faith on the part of the Debtor, this court will not indefinitely postpone the trial of this matter as requested by the Debtor. Instead, the court will schedule a final pre-trial conference and trial of this case in approximately six months. In the intervening time the Debtor may communicate with his counsel, may give a deposition including video tape deposition if he desires, may conduct any and all necessary discovery through his counsel, and may request leave to attend trial. Additionally, if warranted, he may file any further motions for stay supported by additional evidence not heretofore provided. This order is very similar to an order issued by the United States District Court for the Western District of Oklahoma in the case of *Keefe v. Spangenberg*, 533 F.Supp. 49 (1981) except that this court is granting a substantially longer period of time for the Debtor to make his arrangements concerning appearance at trial in person or by deposition.

An order will be entered consistent with this Opinion.