OPINION OF THE COURT
Susan F. Avery, J.
Petitioners commenced the instant 25 summary nonpayment proceedings seeking possession of residential premises located throughout Bronx County. Each proceeding is premised upon the allegation that each respondent failed to pay rent. Petitioners now separately move, in each of the above-captioned cases, for the entry of a default judgment and the issuance of a warrant of eviction, based upon the allegations that at the time of submission of each application, each respondent failed to appear or answer the petition and each remained in rental arrears.
*269 Military Investigation Prior to Default Judgment
As relevant to the instant decision, in Housing Court summary nonpayment proceedings[2] federal law[3] and New York State law[4] require that, prior to the court signing a default judgment, a petitioner must submit an affidavit stating that each respondent is not in active military duty or dependent on anyone in active military duty. A petitioner must comply with both the federal and state requirements.[5]
Consolidation
Each of the 31 affidavits of military status submitted for each of the 25 above-captioned cases[6] read identically, except as to names and times. Each is sworn to by the same individual, notarized by the same notary and sworn to on the same date. Each investigation as to each respondent’s military status or dependency is alleged to have been conducted personally, with 25 different named respondents, all on May 3, 2013, and all within a three hour and seven minute time span.[7] Each affidavit concludes that each respondent is not in active military service or dependent on anyone in active military duty. As a result, this court is given pause to make further inquiry as to the veracity of the allegations in the affidavits.[8] Accordingly, this court *270 consolidates these matters solely for purposes of the instant submissions, and issues the instant interim decision.
Purpose of Military Investigation
As relevant to the instant decision, the military laws provide for a restraint against eviction during the period of military service with respect to premises occupied by persons in active military service or their dependents in actions or proceedings affecting the right of possession.[9] The purpose of both state and federal statutes restricting a landlord’s right to evict individuals in active military duty, or their dependents, is to protect individuals serving in the military from a default judgment being entered against them without their knowledge.[10] The fundamental goal of each act is to protect the rights of service members and their dependents while service members actively serve their country, so that they may devote all of their energy to the defense of the nation without distraction.[11]
In compliance with the foregoing, courts must be “meticulous with respect to the protection of the rights accorded individuals in active military service, and those persons dependent upon those actively engaged in such service”[12] as “[mjilitary personnel who have been defending the country should not return home only to find that, in fact, they have no home.”[13] Accordingly, the acts are to “be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation.”[14]
Based upon the foregoing, an affidavit submitted by a petitioner stating that a respondent is not in active military duty or dependent on anyone in active military service must demonstrate sufficient facts to support the claim. And upon a *271 petitioner’s failure to do so, a default judgment may not be entered.[15]
Affidavits of Military Status Submitted Herein
Cause for concern to this court is that, in each of the 31 affidavits of nonmilitary status, submitted in support of each petitioner’s application for the entry of a default judgment and issuance of a warrant of eviction, the affiant, Amjad Farhat, states[16] that on May 3, 2013, at:
1. “6:05 PM I went to the premises at 750 Grand Concourse, Apt 1L, Bronx, NY 10451 and had a conversation with Raphael L. Almonte . . . .”
2. “6:05 PM I went to the premises at 750 Grand Concourse, Apt 1L, Bronx, NY 10451 and had a conversation with Raphael L. Almonte ... [as to Maricela Navir corespondent] . . . .”
3. “6:12 PM I went to the premises at 825 Gerard Avenue, Apt 4H, Bronx, NY 10451 and had a conversation with Arnaldo Rodriguez . . . .”
4. “6:14 PM I went to the premises at 825 Gerard Avenue, Apt 4K, Bronx, NY 10451 and had a conversation with Angel Noboa Tejeda . . . .”
5. “6:16 PM I went to the premises at 825 Gerard Avenue, Apt 2J, Bronx, NY 10451 and had a conversation with Rosa M. Rivera . . . .”
6. “6:31 PM I went to the premises at 180 East 163 St, Apt 6A, Bronx, NY 10451 and had a conversation with Joseph Marte . . . .”
7. “6:31 PM I went to the premises at 180 East 163 St, Apt 6A, Bronx, NY 10451 and had a conversation with Joseph Marte ... [as to Yokaira Marte corespondent] . . . .”
*272 8. “6:33 PM I went to the premises at 180 East 163 St, Apt 6H, Bronx, NY 10451 and had a conversation with Mercedes E. Rolleri. . .
9. “6:41 PM I went to the premises at 1718 Grand Ave, Apt 6B, Bronx, NY 10453 and had a conversation with Daisy Berrido . . .
10. “6:43 PM I went to the premises at 1718 Grand Ave, Apt 6J, Bronx, NY 10453 and had a conversation with Rosana Suarez . . . .”
11. “7:00 PM I went to the premises at 2115 Ryer Ave, Apt A45, Bronx, NY 10457 and had a conversation with Martha Gonzalez . . . .”
12. “7:07 PM I went to the premises at 2165 Ryer Ave, Apt 1C, Bronx, NY 10457 and had a conversation with Vanessea A. Maris Rodriguez . . . .”
13. “7:11 PM I went to the premises at 2165 Ryer Ave, Apt 6H, Bronx, NY 10457 and had a conversation with Solange M. Guerrero . . . .”
14. “7:20 PM I went to the premises at 2260 University Ave, Apt 5C, Bronx, NY 10468 and had a conversation with Flor M. Ruiz . . . .”
15. “7:38 PM I went to the premises at 2625 Grand Concourse, Apt 6D, Bronx, NY 10468 and had a conversation with Dariel Mejia . . . .”
16. “7:38 PM I went to the premises at 2625 Grand Concourse, Apt 6D, Bronx, NY 10468 and had a conversation with Dariel Mejia. ... [as to Joel T. Vasquez corespondent] . . . .”
17. “7:48 PM I went to the premises at 58 East 190 Street, Apt 5A Bronx, NY 10468 and had a conversation with Rosalind Dawson-Saunders . . . .”
18. “7:55 PM I went to the premises at 50 East 191 Street, Apt 5H, Bronx, NY 10468 and had a conversation with Frances Fulgencio . . . .”
19. “7:57 PM I went to the premises at 50 East 191 St, Apt 3H, Bronx, NY 10468 and had a conversation with Jose Diaz . . . .”
20. “7:57 PM I went to the premises at 50 East 191 St, Apt 3H, Bronx, NY 10468 and had a conversation with Jose Diaz ... [as to Dora M. Calderon corespondent] . . . .”
21. “8:02 PM I went to the premises at 50 East 191 Street, Apt 5S, Bronx, NY 10468 and had a conver *273 sation with Silva M. Petrus . . . .”[17]
22. “8:11 PM I went to the premises at 165 West 197 Street, Apt 4L, Bronx, NY 10468 and had a conversation with Yessica De Ferri . . . .”
23. “8:30 PM I went to the premises at 3525 Perry Ave, Apt 7B, Bronx, NY 10467 and had a conversation with Jennifer Moscoso . . . .”
24. “8:30 PM I went to the premises at 3525 Perry Ave, Apt 7B, Bronx, NY 10467 and had a conversation with Jennifer Moscoso ... [as to Crismely Y. Tavarez corespondent] . . . .”
25. “8:38 PM I went to the premises at 3764 Bronx Blvd, Apt 5H, Bronx, NY 10467 and had a conversation with Barbara A. Rosa . . . .”
26. “8:38 PM I went to the premises at 3764 Bronx Blvd, Apt 5H, Bronx, NY 10467 and had a conversation with Barbara A. Rosa ... [as to Miguel A. Rosa corespondent] . . . .”
27. “8:46 PM I went to the premises at 3990 Bronx Boulevard, Apt 5F, Bronx, NY 10466 and had a conversation with Jamison T. Bowman . . . .”
28. “8:56 PM I went to the premises at 4769 White Plains Road, Apt 4J, Bronx, NY 10470 and had a conversation with George R Myers . . . .”
29. “8:58 PM I went to the premises at 4769 White Plains Road, Apt IE, Bronx, NY 10470 and had a conversation with Jason R. Williams . . . .”
30. “9:05 PM I went to the premises at 707 East Street,[18] Apt 2H, Bronx, NY 10470 and had a conversation with Teofilo Ponce . . . .”
31. “9:12 PM I went to the premises at 735 East 242 Street, Apt 4A, Bronx, NY 10470 and had a conversation with Suzette S. Powell . . . .”
*274 Each affidavit concludes as follows:
“Sworn to before me on
May 4, 2013 /s/ Ami ad Farhat
Lic#1341911
Richmond NY
/s/ Cheryl Marsh
Notary Public”
Taking the affidavits at face value, each separately appears to be facially sufficient.[19] However, given the statements that the affiant visited 25 different premises, made 31 different inquires in eight different zip codes at 19 different apartment buildings and had a personal conversation with 25 different named respondents, over the course of three hours and seven minutes, this court is compelled to conduct further inquiry, as false statements of nonmilitary service of a tenant by a landlord violates the statutes.[20]
Accordingly, this court holds in abeyance a determination on the instant submissions pending the outcome of the below ordered hearing.
Precedent
Precedent dictates that this court is required to make further inquiry as to the veracity of the statements made in the affidavits of military status. “[T]he fact that respondents were readily found personally for the purposes of the non-military affidavit, but could only be served with the petition by conspicuous service .... [caused] the Court ... to request additional documentation from Petitioner’s counsel prior to issuing the [default] warrant.”[21]
Similarly, in the matters at bar, the affiant, Amjad Farhat, *275 claims to have personally conversed with 25 different respondents as to the military status of a total of 31 different individuals. However, the process server that claims to have served each notice of petition and petition in the instant matters, Ahmad Farhat, claims to have served only three of the 31 named respondents by personal service. Accordingly, given the fact that “respondents were readily found personally for the purposes of the non-military affidavit” but more than 90% were unable to be served personally with the notice of petition and petition, this court is compelled to make further inquiry as to the veracity of the allegations in the affidavits of military status.[22]
Requirements of Licensed Process Servers
Recent amendments[23] to the New York City Administrative Code[24] and the Rules of the City of New York[25] currently require a licensed process server “to carry at all times during the commission of his or her licensed activities” a “device to establish electronically and record the time, date, and location of service.”[26]
The purpose of the new requirement is to deter process servers from filing affidavits which assert false claims and to make it easier for those reviewing such affidavits to detect such falsehoods.[27]
In each affidavit of military status submitted in the 25 pending matters, the line immediately below the affiant’s (Am *276 jad Farhat’s) signature reads: “Lic#1341911” (sic). Accordingly, this court holds that where a licenced process server undertakes to conduct an investigation as to a party’s military status, and supplies within the affidavit his or her process server’s license number, he or she was acting in “the commission of his or her licensed activities,”[28] when performing such investigation, and therefore the New York City Administrative Code and the Rules of the City of New York require that each investigation be memorialized with an electronic recording.
Determination/Hearing
Sufficient cause appearing hereon, it is: ordered, that the instant 25 matters will appear on the court calendar, on July 31, 2013, at 141 Livingston Street, Kings County, Part A, room 904, at 2:30 in the post-noon for a hearing to determine, inter alla, if, each allegation that Mr. Amjad Farhat, previously swore to, in each affidavit of respondents’ military status, is true, pursuant to penalties of perjury; and it is further, ordered, that Mr. Amjad Farhat, may appear at the hearing along with counsel of his choosing, and with documents to establish that, during the relevant time, he did in fact personally visit each apartment, and had personal conversations which each individual that he swears, under penalties of perjury, that he personally conversed with. Such documents shall include: the affiant’s license (No. 1341911), logbook and GPS records, as applicable, pursuant to the New York City Department of Consumer Affairs, the Rules of the City of New York, and the directives of this interim decision and order.
Depending on the credibility this court determines the witness’ testimony merits, or upon the witness’ default, this matter may be referred to the Office of the District Attorney, the Office of the Attorney General and/or the Department of Consumer Affairs, for appropriate action; and it is further, ordered, that if they have not yet done so, the named respondents in each action, if so inclined, may appear in the courthouse located at 1118 Grand Concourse, Bronx, New York and file any *277 appropriate documents with the clerk of the court in avoidance of the entry of a default judgment; and it is further, ordered, that each respondent, if so inclined, may appear in the courthouse located at 141 Livingston Street, Brooklyn, New York, to participate at the hearing to be held on July 31, 2013, Part A, room 904 at 2:30 in the post-noon, and if any respondent so chooses, may present testimony, to corroborate or disavow the statements made in the military status affidavits, as alleged by affiant.

. London v O’Connell, 20 Misc 2d 168 (Mun Ct, NY County 1959).

. 50 USC Appendix § 521 et seq.

. Military Law § 309.

. “There is no question that [petitioner/landlord] must meet the requirements of both the Federal and State laws before it may evict [respondent/ tenant]” (Cornell Leasing Corp. v Hemmingway, 147 Misc 2d 83, 85 [Civ Ct, Kings County 1990], citing 5 West’s Federal Practice Manual § 6291 [2d rev ed]).

. Six proceedings have two named respondents and petitioner submitted separate affidavits for each named respondent.

. The court acknowledges Jon Helfman, Warrant Clerk, Bronx County Housing Court, for bringing this matter to the court’s attention.

. Applications for entry of default judgments and warrants of eviction in six nonpayment proceedings consolidated for joint hearing to determine “whether [each] affidavit [of nonmilitary status] was false.” In all six cases the same six petitioners were represented by the same attorney and the same process server claimed to have personally spoken to respondent and concluded that no respondent was in active military service or dependent on one in active military duty. The “affidavits in these proceedings were all a standard form lacking any detail of what actually occurred at the time of the alleged investigation .... no physical descriptions are included of the individuals allegedly spoken to, nor are any descriptions included of the locations actually visited” (Riverbay Corp. v Selden, 27 Misc 3d 1204[A], 2010 NY Slip Op 50544[U], *5 [Civ Ct, Bronx County 2010]).

. Military Law § 309 (1); 50 USC Appendix § 521.

. Benabi Realty Mgt. Co. v Van Doorne, 190 Misc 2d 37 (Civ Ct, NY County 2001, Sehachner, J.).

. Schachner & Weissman, Outside Counsel, Using Affidavits of Military Service in Housing Court Proceedings, NYLJ, June 5, 2002 at 4, col 4.

. 363 Assoc. v Sharhan, 2 Misc 3d 928, 929 (Civ Ct, NY County 2003).

. Schachner & Avery, Outside Counsel, Housing Court Part M, the Military and Their Dependents, NYU, May 12, 2003 at 4, col 2; see also Matter of 552-562 Academy St. Corp. v Calderon, 38 Misc 2d 873 (Civ Ct, NY County 1963).

. Boone v Lightner, 319 US 561, 575 (1943).

. 53A Am Jur 2d, Military and Civil Defense § 368.

. Contrary to precedent that “[an] affidavit should contain separate, numbered paragraphs for each factual allegation” (GBI Acupuncture, EC. v Esurance Ins. Co., 38 Misc 3d 1208[A], 2012 NY Slip Op 52423[U], *5 [Civ Ct, Kings County 2012], referencing generally Phillips v Girdich, 408 F3d 124 [2d Cir 2005]) “[in order] to facilitate the clear presentation of the matters set forth in the affidavit, so that, allegations might easily be referenced in subsequent legal papers” (GBI Acupuncture, P.C. v Esurance Ins. Co., 2012 NY Slip Op 52423[U], *5), the 25 affidavits submitted in the matters currently before the court fail to contain numbered paragraphs. As a result of petitioner’s failure to sequentially number each paragraph of any of the affidavits, this court is unable to direct the reader to any paragraph by specific paragraph number when referring to specific language in the affidavits.

. See n 1, supra.

. The court notes that the address from which possession is sought, as stated in the petition is “707 East 242 Street” and not “707 East Street” as cited in the affidavit, accordingly, the affidavit, even if otherwise sufficient, cannot support the entry of a default judgment against the named respondent.

. A process server’s inquiry of the person served, as to “whether [the defendant] was presently in military service of the United States Government or on active military duty in the service of the State of New York” was sufficient (Bergani v Desena, 50 AD3d 716 [2d Dept 2008]).

. 50 USC Appendix § 521 (c): “A person who makes or uses [a nonmilitary] affidavit . . . or a statement, declaration, verification, or certificate . . . knowing it to be false, shall be fined ... or imprisoned ... or both”;
Military Law § 309 (3): “Any person who shall knowingly take part in any eviction or distress otherwise than as provided in subdivision one of this section, or attempts so to do, shall be guilty of a misdemeanor, and shall be punishable by imprisonment ... or by fine ... or both.” (See also Matter of Holstein, 43 AD2d 9 [1st Dept 1973].)

. Morris Hgts. Restoration v Torres, 25 Misc 3d 1233(A), 2009 NY Slip Op 52404(U), *2 (Civ Ct, Bronx County 2009); see also Riverbay Corp. v Selden.

. Morris Hgts. Restoration v Torres.

. The amendments were enacted following hearings held by a committee of the City Council, where
“witnesses presented evidence of the widespread prevalence in New York City of ‘sewer service,’ an illegal practice in which process servers falsely claim to serve summonses and other process on parties to legal proceedings. The false service of legal papers is particularly common in consumer debt collection cases, where it deprives consumers of the opportunity to defend themselves against creditors’ claims that are frequently incorrect or even entirely false” (NY City Dept of Consumer Affairs, Notice of Adoption of Rules and Amendments to Rules Regarding the Licensing of Process Servers, available at http://www.nyc.gov/ html/dca/downloads/pdf/ps_rule_effective_091211 .pdf).

. Administrative Code of City of NY § 20-410.

. 6 RCNY 2-233b (a).

. Such an electronic device is more commonly known as a “global positioning system” or “GPS.”

. This “technological tool [is] to [be used to] detect and deter ‘sewer service’ ” (NY City Dept of Consumer Affairs, Notice of Adoption of Rules and Amendments to Rules Regarding the Licensing of Process Servers, available at http://www.nyc.gov/html/dca/downloads/pdf/ps_rule_effective_091211.pdf).

. Indeed, 6 RCNY 2-231 reads as follows: “ ‘Process’ shall mean a summons, notice of petition, order to show cause, subpoena, notice, citation or other legal paper issued under the laws of the State of New York directing an appearance or response to a legal action, legal proceeding or administrative proceeding.” As an affidavit of military status is a “legal paper” and questions of military status require a “response” in order for “a legal action” to proceed, it is a form of process, and therefore the recently enacted amendments cited above apply.