LINN, Circuit Judge,
concurring in part and concurring in part in result.
I concur in the majority’s determination of the PTSD claim, which is not affected by the timeliness issue. With respect to the remaining claims, I respectfully disagree with the majority’s determination that they were time barred, but addressing the merits, concur in the result.
I. DISCUSSION
A. The Relief Act’s Tolling Provision
The majority interprets the Relief Act in effect to distinguish between servicemem-bers suffering injuries expected to heal in a few months from servicemembers suffering potentially more serious injuries that could take an indeterminate period of time to heal and warrant placement on the List. In the majority’s view, the Relief Act protects only the former. The first stated purpose of the Relief Act is “to provide for, strengthen, and expedite the national defense through protection extended by this Act [said sections] to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation.” 50 U.S.C. app. § 502(1). I find that neither the text of the Relief Act nor its legislative history provides any principled reason to make the distinctions the majority would make.
Statutory interpretation begins with the text of the statute. Turtle Island Restoration Network v. Evans, 284 F.3d 1282, 1291 (Fed.Cir.2002), cert. denied, 538 U.S. 960, 123 S.Ct. 1748, 155 L.Ed.2d 511 (2003). The Relief Act’s tolling provision excludes a servicemember’s period of “military service” from “any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of the ... United States by or against the servicemem-ber....” 50 U.S.C. app. § 526(a). The Relief Act’s Section 511(2) provides four sub-definitions of “military service,” including “active duty” as defined by 10 U.S.C. § 101(d)(1), “a call to active service” for a member of the National Guard under 32 U.S.C. § 502(f), and “active service” of commissioned officers of the Public Health Service or the National Oceanic and Atmospheric Administration. Section 511(2)(C), the fourth and final sub-definition, merely states that “military service” includes periods of an absence from the three prior listed “duties” on account of sickness, wounds, leave, or other lawful cause. A servicemember is placed on the List, and therefore authorized to be re *1342 moved from active duty, as a result of a physical disability. 10 U.S.C. § 1202. Periodic medical exams are used to assess whether the service member should remain on the List. 10 U.S.C. § 1210(a)-(f). Because time spent on the List is an absence from duty on account of sickness, wounds, or otherwise lawful cause, on its face, the Relief Act’s tolling provisions apply-
The Navy’s arguments to the contrary are not persuasive. The Navy first argues that “absent from duty on account of sickness, wounds, leave, or other lawful cause” under the Relief Act is best understood as the converse of “absence without leave” (“AWOL”). However, the defining characteristic of AWOL is leave without authority. 10 U.S.C. § 886. Placement on the List comes with authorization for the ser-vicemember to be absent from duty. The Navy also contends that the “more natural and plain reading” of the statute is that “absent from duty on account of sickness, wounds, leave, or other lawful cause” refers to a temporary absence from a duty post without separating from active duty. Appellee’s Br. 27-28. However, that ignores that fact that the statute’s definition of “military service” includes not only “active duty” but separately also includes time “absent from duty on account of sickness, wounds, leave, or other lawful cause.” 50 U.S.C. app. § 511(2)(C). This statute draws a distinction between time on active duty and time during which there is an absence of duty on account of sickness, wounds, leave, or other lawful cause; and both are considered to be military service.
The Navy next argues that time spent on the List is total separation from the military more akin to an absence of duty as with retirement as opposed to an absence from duty as contemplated by the Relief Act’s definition of military service. The majority places great emphasis on the fact that servicemembers on the list must consent to reinstatement or reappointment in order to return to active duty. Majority at 1335-36. While there is a degree of separation from the military when on the List, significant connections to the military nonetheless remain. For example, placement on the List provides active duty allowances for travel in connection with the requisite medical examinations. 10 U.S.C. § 1210(g). Also, if the servicemember does consent to be “recalled to active duty” or reenlisted, the time spent on the List may count as years of service for purposes of future promotions. 10 U.S.C. § 1211(e). Although I recognize that to return to active duty, a servicemember on the List must be “reappointed” or “reenlist,” under 10 U.S.C. § 1211(a), a servicemember is not actually discharged or retired while on the List. Discharge or retirement from military service occurs only if the service-member’s physical disability becomes permanent or the servicemember declines to return to duty when the disability abates. See, e.g., 10 U.S.C. §§ 1210(c) (If it is “determined that the member’s physical disability is of a permanent nature and stable and is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination, his name shall be removed from the temporary disability retired list and he shall be retired under section 1201 or 1204 of this title... .”); 1210(f)(“(l) [i]f, as a result of a periodic examination ... or upon a final determination ... it is determined that the member is physically fit to perform the duties of his office, grade, rank, or rating, the Secretary shall (A) treat the member as provided in section 1211 of this title [for reappointment or reenlistment with the servicemember’s consent]; or (B) discharge the member, retire the member, or transfer the member to the Fleet Reserve, Fleet Marine Corps Reserve, or inactive *1343 Reserve under any other law if, under that law, the member (i) applies for and qualifies for that retirement or transfer; or (ii) is required to be discharged, retired, or eliminated from an active status.”).
The Navy argues that the Relief Act’s tolling provision applies only to the “period of military service,” which it contends ends upon release from activity duty. The Navy relies on Diamond v. United States, 170 Ct.Cl. 166, 344 F.2d 708, 706 (1965) (holding that under the Relief Act’s predecessor, a service member’s “release from active duty terminated his ‘period of military service’ ”) and Lowe v. United States, 79 Fed.Cl. 218, 225 (2007) (holding that, “[o]n plaintiffs release from active duty, the tolling provision of the [Relief Act] ceased to operate, and the six-year statutory period of limitations began to run”). The Navy further contends that receipt of Defense Department Form 214 (“DD-214”) relieves a servicemember from active duty, and Cronin received that form when she was placed on the List. However, neither Diamond nor Lowe involved time on the List, which as discussed above defines “military service” as not only “active duty” but also separately as an absence from duty on account of sickness, wounds, leave, or other lawful cause. 50 U.S.C. app. § 511(2)(C). The argument that “TDRL is not active service,” Dambrava, 466 F.3d at 1063, thus falls short. See also Bradley, 161 F.3d at 782 (concluding that time on the List “was not active duty” without addressing the Relief Act’s tolling provision or whether time on the TDRL nonetheless would be “military service”).
Likewise, the majority relies on Commander Cronin’s receipt of DD-214 as evidence that Commander Cronin was not “absent from duty” once placed on the List. Majority at 1336. However, while receipt of Form 214 may reflect that Commander Cronin’s “active duty” ended when she was placed on the List, that does not answer the question of whether her “military service” had ended or whether she was absent from that duty on account of sickness, wounds, leave, or other lawful cause. The majority notes that no new DD-214 was issued when Commander Cronin was placed onto the Permanent Disability Retired List, but there is no contention that she resumed “active duty” such that a new DD-214 would have been appropriate. Nor is there any contention that receipt of DD-214 permanently retired or discharged Commander Cronin, which as discussed above would occur only at the conclusion of her time on the List.
Courts previously have recognized that time spent on the List is difficult to categorize, referring to the status as a “limbo status.” See Craft, 544 F.2d at 476. Given that the state of limbo and the Supreme Court’s repeated direction for the need to construe the act liberally in favor of the serviceman, Le Maistre v. Leffers, 333 U.S. 1, 68 S.Ct. 371, 92 L.Ed. 429 (1948); Boone v. Lightner, 319 U.S. 561, 575, 63 S.Ct. 1223, 87 L.Ed. 1587, reh’g denied, 320 U.S. 809, 64 S.Ct. 26, 88 L.Ed. 489 (1943), I would find that the Relief Act’s tolling provision applies here.
The weight of authority concerning the tolling provision of the Relief Act’s predecessor similarly supports the view that time on the List is military service under the Relief Act. The Relief Act is the 2003 recodification of the Soldiers’ and Sailors’ Civil Relief Act of 1940. 149 Cong. Rec. E14-02, E14. That act contained a similar tolling provision, in which “[t]he period of military service shall not be included in computing any period now or hereafter to be limited by any law for the bringing of any action by or again any person in military service....” Act of October 17, 1940, ch. 888, 54 Stat. 1181. Applying that act, *1344 the Tenth Circuit concluded that “placement on the ‘temporary disability retired list’ constitutes ‘absentee] from duty on account of sickness’ under the Act....” Mason, 862 F.2d at 245. A district court in the Southern District of New York reached the same conclusion. See Cruz, 308 F.Supp. at 1055-56. The Navy points out that neither case involved the United States as a party. The reasoning and conclusions reached are nonetheless informative. The majority discounts Cruz and Mason because they “rest” on the predecessor act’s “own distinct purposes and the need to construe that Act liberally for members of the armed services.” Majority at 1338. However, Cruz concluded that the purpose of the predecessor act was to provide “protection of a serviceman who is unable to attend to his affairs, whether because he is stationed away from home in active service or is recovering from injuries incurred while in such active service.” Cruz, 308 F.Supp. at 1057. The stated purpose of the successor Relief Act hardly compels a different result. See 50 USC app. § 502(1) (The purpose of the Relief Act is “to provide for, strengthen, and expedite the national defense through protection extended by this Act [said sections] to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation.”).
The majority supports its decision by referring to cases holding that time on the List is not “active service.” Majority at 1337-38. However, none of these cases addressed whether time on the List should be considered “military service ” for purposes of the Relief Act, of which “active service” is only one aspect.
Finding the statutory language unambiguous, reviewing the legislative history is unnecessary. Moreover, I note that the legislative history, as often is the case, is largely inconclusive but recent history supports my conclusion. The Navy argues that historically, “[pjersons absent from duty on account of sickness, wounds, or other lawful cause are considered as still on active duty.” O’Keefe v. United States, 174 Ct.Cl. 537, 549 n. 5 (Ct.Cl.1966) (citing the military’s 1944 Dictionary of U.S. Army Terms). Thus, it contends that Section 511(2)(C) must be understood in that light. The original version of 10 U.S.C. § 1211, enacted in 1956 reinforces the notion that historically, time on the List was not considered active duty and thus was not an absence on account of sickness, wounds, or other lawful cause. The original statute referred to officers on the List needing to be “recalled to active duty,” 70A Stat. 96 (1956), suggesting that a servicemember on List was not already on active duty and therefore would not be considered as “absent from duty on account of sickness, wounds, or other lawful cause.”
The current Relief Act, however, restructured the definition of “military service” and defines “active duty” separately from “any period during which a service-member is absent from duty on account of sickness, wounds, leave, or other lawful cause.” 50 U.S.C. app. § 511(2)(A)(i) and (C). The legislative history is silent as to why the drafters separated “active duty” from an absence on account of sickness, wounds, leave, or other lawful causes. Nonetheless, the statute clearly separates the two concepts. Thus time during a period under Section 511(2)(C) is now considered distinct from active duty but is still part of “military service” and thus falls within the Relief Act’s tolling provision.
Indeed, when the predecessor act was recodified as the Relief Act, Mason and Cruz had been decided for fifteen years, and the Relief Act, which was the product of “more than 10 years” of preparation, *1345 was intended to be a “complete restatement” of its predecessor, “including a gathering of the relevant judicial interpretations and a measured casting aside of those few interpretations that do not comport with the author’s understanding of the law’s intent,” 149 Cong. Rec. H3688-03, H3696. The “restatement” was necessary to, among other things, “incorporate over 60 years of case law ...” since the predecessor act was enacted. H.R. Rep. 108-81. Though the record does not indicate Congress directly discussed Mason or Cruz, I find it inconceivable that Congress, specifically setting out to survey the case law, could have been unaware of these cases or that it would have restructured the definition of “military service” as it did if it believed that Mason and Cruz did not comport with the author’s understanding of the law’s intent. The majority concludes that Mason and Cruz did not “settle” the law regarding the application of the Relief Act’s tolling provision to members on the List, “especially in light” of Craft, Dambrava, Bradley, and Cortez. Majority at 1337-38, 1339. However, while these cases considered “active duty” with respect to the List, none assessed the full scope of “military service” with respect to the Relief Act and thus none are particularly germane to the specific issue presented here.
Finally, I note that while the Trial Court in this case correctly held that the Relief Act does toll the statute of limitations during the time spent on the List, a recent decision in a separate case reached the opposite conclusion. See Dean, 92 Fed.Cl. 133. I first observe that in Dean, the claim was filed more than six years after the veteran was removed from the List and permanently discharged from the military by reason of physical disability. Id. at 153. Accordingly, the Relief Act’s tolling provision could not have salvaged his claim, in any event. Moreover, though Dean thoughtfully surveyed the statutory framework and this court’s precedent, I respectfully find the analysis unpersuasive. Dean correctly noted that under the statutory framework and this court’s precedents, time on the List was not active service. Id. at 152-152. However, as discussed above, the Relief Act distinguishes between active duty and “any period during which a servieemember is absent from duty on account of sickness, wounds, leave, or other lawful cause.” Dean “decline[d] to make a determination that a sickness, as noted in 50 U.S.C. appl. § 511(2)(C), rises to the level of a disability.” Id. at 153. However, as discussed above, I conclude that under the statute’s plain language, within the definition of 50 U.S.C. appl. § 511(2)(C) are sicknesses or wounds so severe as to rise to the level of a disability resulting in an absence from duty for a lawful cause, such as the List. A service-member is not actually retired or discharged while on the List, events which occur only after the servicemember’s disability recedes and the servieemember refuses to consent to return to active duty. Accordingly, a servieemember placed on the List because of a disability, though not on “active duty,” continues to be engaged in “military service” for purposes of the tolling provision.
For the foregoing reasons, I would hold that the Relief Act’s tolling provision applies to time served on the List and would conclude that Cronin’s claims are not time barred by the Tucker Act’s six year statute of limitations.
B. Cronin’s Promotion Claim
On the merits, I would affirm the Trial Court’s determination that Cronin failed to demonstrate reversible error. Cronin’s first claim is that she is owed backpay because she should have received, but ille- *1346 gaily was denied, a promotion to Commander as of October 1,1994.
Cronin contends that she was promoted to Commander automatically on October 1, 1994 without the need for any other action. She contends that October 1, 1994 was the date of her appointment and the Navy failed to follow the regulations that might have permitted a delay of that promotion. She argues further that because she was frocked as a Commander, she could not be denied promotion unless some restriction imposed by law allowed for that denial. See MILPERSMAN 2220130(5)(e) (“Frocked officers will be entitled to military identification cards and all privileges for the higher pay grade except entitlements restricted by law.”). She concedes that SECNAVINST 1420.1A(23), a Navy regulation, outlines such a “restriction,” allowing the Navy to delay a promotion but only if “[t]here is cause to believe that the officer is mentally, physically, morally, or professionally unqualified” and allowing that delay “only if the officer has been given written notice of the grounds for the delay before the effective date of the appointment, unless it is impractical to do so, in which case such written notice shall be given as soon as practicable.” J.A. 265; see also 10 U.S.C. § 624(d)(2)-(3) (providing for the same and incorporated by MILPERSMAN 2220130(5)(b) for frocked officers). She contends that the Navy failed to follow SECNAVINST 1420.1A and 10 U.S.C. § 624(d)(2)-(3) because she was not given the required notice. She also points to her personnel file that in fact notes a promotion to Commander effective October 1, 1994 that later was struck through with a note that she was not promoted “as she was not physically qualified.” J.A.82.
The Navy responds that Cronin was not actually promoted because she did not receive the standard appointment form and the Navy announced the delay of her promotion before October 1, 1994 in accordance with the applicable regulations. The Navy further contends that it properly delayed Cronin’s promotion because it had cause to believe that she was physically unqualified, which under the Navy’s regulations allows for a delay of promotion. The Navy finally asserts that to the extent regulations were not strictly followed, the error was harmless.
Cronin’s arguments are unpersuasive. The Navy gave Cronin the required notice of a delay in her promotion in the form of a letter dated September 30, 1994. The letter informed Cronin that her promotion would be delayed because she was not fit for duty. See J.A. 88; Opinion at 42. Cronin contends that this letter must have been backdated from at least October 5, 1994 (and thus after her promotion was to occur) because the letter refers to a Medical Evaluation Board (“MEB”) report that did not issue until October 5, 1994. The Trial Court “declined to presume falsification of the September 30 date” and “presume[d] that the Chief of Naval Personnel saw an earlier version of the medical board report.” Id. This finding is not clearly erroneous. See Richey v. United States, 322 F.3d 1317, 1326-27 (Fed.Cir.2003) (The plaintiff in military records correction case must “overcome the presumption of regularity that attaches to all administrative decisions-”).
Cronin next contends that the letter was ineffective regardless of the date because she did not receive it before the effective date of her promotion. However, even assuming the regulation requires Cronin to actually receive the written notice before the effective date, Cronin was provided a full opportunity to respond to the letter, so any procedural error as to the date she received it, and thus with respect to SEC-NAVINST 1420.1A and 10 U.S.C. *1347 § 624(d)(2)-(3), was harmless. Barnes v. United States, 473 F.3d 1356, 1363 (Fed.Cir.2007) (finding any procedural defect with respect to notice of a promotion delay to be harmless when the serviceman was provided an opportunity to respond and no action or decision is made against him in the interim).
Lastly, though her personnel record at one point indicated the promotion had occurred, the Trial Court noted that Cronin never received or executed an appointment form regarding the actual promotion, a form that she had received and executed in connection with all previous promotions and that “normally” carries the “authority to effect promotion.” Opinion at 45 (quoting the announcement of the promotion list bearing Cronin’s name). For these reasons, I cannot conclude that the Board’s determination that Cronin was not actually promoted to commander on October 1, 1994 was clearly erroneous, arbitrary and capricious, unsupported by substantial evidence, or otherwise not in accordance with the law.
Cronin next attacks the basis on which the promotion was delayed, but that attack also fails. SECNAVINST 1420.1A(23)(a)(5) allows for delay if “[t]here is cause to believe that the officer is mentally, physically, morally, or professionally unqualified.” MEBs in 1993 and 1994 found Cronin was unfit for full duty and recommended limited duty assignments. J.A. 128. The last period of limited duty recommended by the MEB was set to expire on September 12, 1994— before the October 1, 1994 promotion. However, a Navy physician in a letter in August 1994 again opined that Cronin was not fit for full duty. Opinion at 3.
Cronin’s argument relies on MILPERS-MAN 2220150(2), which provides that an officer “shall be considered physically qualified provided the officer is not in one of the following situations:
a. Undergoing hospitalization.
b. On sick leave.
c. Awaiting appearance before a physical evaluation board.
d. Classified as fit for limited duty based on the recommendations of a medical board.
e. Awaiting final action on the recommended findings of a physical evaluation board or a medical board.”
She contends that none of those conditions applied as of October 1, 1994 and that therefore the Navy must consider her physically qualified. However, MIL-PERSMAN 2220150(1) provides that the reference point of the officer’s physical qualification is “as reflected by the officer’s most recent physical examination,” and MILPERSMAN 2220150(2) further provides that the enumerated list above also is “[sjubject to any further review of the records in the Navy Department which may be indicated and action resulting from that review....” The report of the MEB in April 1994 and the August 1994 letter from a Navy physician fully support the Navy’s actions and are in accordance with MILPERSMAN 2220150(1) and (2).
Cronin next points to MILPERSMAN 2220150(3) which provides that:
The foregoing criteria [from MILPERS-MAN 2220150(2)(a)-(e) ] may not exclude from promotion an officer who, if otherwise eligible, is determined to be not physically qualified for promotion when the Chief, Bureau of Medicine and Surgery determines that the officer’s physical disqualification was by reason of wounds received in the line of duty and that such wounds do not incapacitate the officer for the performance of useful service in the higher grade.
*1348 However, it is undisputed that the Chief, Bureau of Medicine and Surgery made no such determination.
Cronin also argues that the Navy failed to follow its regulations with respect to the length of time for the delay. SECNA-VINST 1420.1A(23)(d) initially allows a delay of six months, which can be extended. There is no dispute that a formal request for a permissible extension was made, Opinion at 12, but Cronin contends that there is no indication as to whether the request was approved or disapproved. The Board determined that the request was approved, and given that the delay in fact continued, that finding is not clearly erroneous. Kaneko v. United States, 122 F.3d 1048, 1053-54 (Fed.Cir.1997) (“Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.”)
Cronin similarly argues that the Navy failed to follow its own regulations when it delayed her promotion beyond 18 months, the absolute limit allowed by SECNA-VINST 1420.1A(23)(d). Cronin was set to be promoted on October 1, 1994. Within the statutory 18-month period, the Navy took action to end the delay of her promotion by issuing her formal TDRL order placing her on the List and simultaneously promoting her to Commander as of May 31, 1996. J.A. 139. The Trial Court concluded that the retirement order was effective as the “last possible action the Navy could take with respect” to Cronin’s promotion. Opinion at 47. I see no clear error in that determination and find no basis to conclude that the Navy’s actions were contrary to the provisions of SEC-NAVINST 1420. 1A(23)(d).
C. Cronin’s Disability Rating Claim
Cronin separately challenges her disability rating. Specifically, she challenges her ratings with respect to migraines, her right heel injury, and chronic pain. Regarding migraines, she argues that they should have been found unfitting before she was placed on the List and that the Navy ignored the rating under the Veterans Affairs Schedule for Ratings Disability (“VASRD”) for the migraines from which she suffered. Regarding her right heel injury, she contends that the Navy ignored the record evidence, instead substituting its own lay opinion. She lastly contends that the Navy generally failed to consider her medical records and their descriptions of her conditions, instead substituting its own opinions.
1. Migraines
There is no dispute that Cronin suffered migraines at the time she was placed on the List. Cronin therefore contends that under the VASRD, the migraines should have been rated at 30%. See 38 C.F.R. § 4.124(a). However, at the time she was placed on the TDRL, her migraines were assigned to category III as not separately unfitting and not contributing to any unfitting condition. Based on evidence in the record, the PEB and the Board found that the migraines were not unfitting because they appeared to be well controlled with medication and treatment. Opinion at 53-54. There is sufficient evidence in the record to support the decision that the migraines were not unfitting and therefore not ratable.
2. Right-Heel Injury
Cronin’s right-heel injury was considered unfitting and compensable at the time Cronin was placed on the List. Id. at 52. Subsequently, a physician determined pri- or to the 2000 Physical Evaluation Board that Cronin’s right heel had full range of motion and “minimal tenderness to palpation” and re-diagnosed the injury from a calcaneal spur to calcaneal pain. Id. The *1349 2000 Physical Evaluation Board observed Cronin in heeled sandals rather than orthopedic footwear, and based on its own observation and the recent physician’s report reduced the rating from 30% to 0%, though still finding the condition to be unfitting. See DES § 3804(Z)(1) (“Mcca-sionally, a medical condition that causes or contributes to Unfitness for military service is of such mild degree that it does not meet the criteria for even the lowest rating provided in the VASRD [and a] zero percent rating may be applied_”). Cronin protests the Physical Evaluation Board and subsequent Board decisions for basing the rating on their own “subjective opinions,” but the physician’s report of full range of motion and only minimal tenderness provides substantial evidence to support the Board’s decision.
3. Chronic Pain
Cronin argues that her chronic pain is a “ ‘new condition’ related to the treatment of other conditions for which she was placed on the TDRL.... ” Appellant’s Br. 5. To be compensable, the condition must itself be unfitting, DES § 3618, and Cronin merely points to evidence that she receives treatment for chronic pain rather than developing sufficient argument or pointing to sufficient evidence here capable of demonstrating that her chronic pain is unfitting.
Related to her chronic pain claim, Cronin argues that the Board erred by refusing to adequately consider whether multiple conditions, each not unfitting in isolation, together should be considered unfitting in combination, including her complaints of migraines, chronic pain, fi-bromyalgia, TMJ, and carpal tunnel syndrome. DES § 3804(k) provides that a “member may be determined Unfit as a result of the overall effect of two or more impairments even though each of them, standing alone, would not cause the member to be referred into the DES or be found Unfit because of physical disability.” However, fibromyalgia and TMJ are new conditions relative to when Cronin was placed on the List, and Cronin has not demonstrated that they could satisfy the conditions of DES § 3618. The conditions do not appear related to a condition unfitting at the time she was placed on the List — or its treatment — or are themselves conditions that were unfitting at the time she was placed on the List. Without either showing, the conditions could not be compensable the first instance. Cronin did complain of migraines and carpal tunnel syndrome at the original 1995 PEB, and as discussed above she contends that her chronic pain is related to her unfitting conditions, but she raises no argument as to how these conditions when considered together somehow render her unfit when separately they do not. Even if the statute allows for what Cronin argues, on this record I cannot conclude that the Board’s conclusion lacks substantial evidence or was arbitrary and capricious.
Finally, Cronin makes a global argument that the Navy must have failed to consider all of the evidence when it decided against her. Though I find that the record reflects that Cronin unfortunately suffers from numerous ailments, for the reasons described above, the record also provides substantial evidence to support the Board’s conclusions that her PTSD, migraines, right-heel injury, and chronic pain are non-compensable under the DES despite the fact that Cronin may suffer from them.
II. Conclusion
For the foregoing reasons, while I concur in the majority’s determination of the PTSD claim and concur in the majority’s disposition of the remaining claims, I *1350 would reach that result on the merits of all of the issues on appeal.